The Trustees of the Wabash and Erie Canal *v*. Brett and Others.

The judgment is affirmed, with costs.

*Brown* and *Polk*, for appellant.

*T. B. Redding* and *J. H. Mellett*, for appellee.

---

## The Trustees of the WABASH and ERIE Canal *v*. BRETT and Others.

WATER POWER.—LESSOR AND LESSEE.—The Trustees of the *Wabash* and *Erie* Canal leased the use and occupation of so much of the surplus water of the canal at a certain point as should be required to run a mill of a given capacity. The right was reserved by the trustees to resume the use of the water leased whenever its use should be necessary for navigation, by paying to the lessees the value of their mill property. Suit by the lessees for damages, alleging that the canal had been abandoned and suffered to go to decay, &c.

*Held*, that the contract was a mere water lease, and, as there was no covenant to keep in repair, the lessors were not liable.

*Held,* also, that the stipulation in the lease that damages should be allowed in case the use of the water should be resumed by the trustees for purposes of navigation, excludes any implication that a liability could result from a failure to keep in repair.

APPEAL from the *Vigo* Circuit Court.

FRAZER, C. J.—This was an action by the appellees against the appellants.

The complaint was in two paragraphs, not essentially different, so far as the question presented for our decision is concerned. It is alleged, and appears by a copy of the instrument made part of the complaint, that the defendants, in 1855, leased to the plaintiffs and one *Spink,* an acre of land in *Daviess* county, and " the use and occupation of so much of the surplus water of the *Wabash* and *Erie* canal, at the first lock above *Maysville,* in said county, not required for navigation," as might be necessary to propel a mill of a specified character, so as to perform a given amount of work. The lease was subject to certain restrictions. The rent was to be $250 per annum, and it was agreed that " no deduction should be made in consequence of a failure of a supply of water to propel said machinery, but the full amount of said sum is to be paid as hereinafter prescribed, notwithstanding any delays or stoppages which may occur by direction of the canal officers, as herein provided, or for want of water, or from freezing, or in consequence of floods, or from any other cause whatever." Power was reserved to the officers of the canal to draw the water out of the canal, to remain out so long as might be necessary to prevent or repair breaches thereof, remove obstructions to its navigation, or to make improvements in it, or in the works connected with it. The right was reserved, upon paying for the mill, to resume the use of the water leased whenever it might be necessary for navigation, or whenever its use for hydraulic purposes should be found in any manner to interfere with the convenient navigation of the canal. The lessees were not to assign their lease without the written consent of the trustees. It is also averred that the lessees,

immediately after the date of the lease, built a mill and commenced running it; that thereafter *Spink* assigned his interest in the lease to the plaintiffs. The breach alleged is, that the defendants, since 1857, have failed and refused to furnish any water power to the plaintiffs, and have abandoned that part of the canal and suffered it to go to decay, so that the water power has been destroyed and the plaintiff's machinery rendered valueless.

There was a demurrer to the complaint, which was overruled, and thereupon arises the only question necessary to be considered.

The lease contains no express covenant to keep the canal in repair, and no words indicating that such was the intention of the parties. It is well settled that a lease does not necessarily imply a covenant to repair, by the lessor. This court has so held in *Kellenberger* v. *Foresman*, 13 Ind., 475. This doctrine has been applied to leases of the use of water, and no reason is perceived, why it should not be so applied. *Morse* v. *Maddox*, 17 Mo., 569. It has also been applied where a privilege had been granted to get water at a well, and the grantor had suffered the well to go to decay. *Ballard* v. *Butler*, 30 Maine, 94.

But it is urged that the instrument is more than a mere lease, or letting to use; that it is a contract to furnish the water power, and therefore necessarily implying a contract to keep up the canal so that the power can be furnished. In form, the instrument is a mere lease of the use of the water, and we perceive nothing to distinguish the case so as to make it an exception to the general doctrine that the landlord is not bound to repair in the absence of a covenant to do so. The case of *Morse* v. *Maddox, supra,* was a lease for five years of land, and "also the mill privilege by and through the saw mill flume of the lessor, or his fore-bay, or out of his mill pond in some way," to propel the machinery of a saddle-tree factory, The lessee built his factory, and during the term the dam became so decayed that a sufficient supply of water was not furnished from the pond

to drive the lessee's machinery. He sued the lessor, and it was ruled that the latter was not liable for failing to repair the dam, or for anything short of a misfeasance. This is very much in point here. The counsel for the appellees, however, rely upon *Dexter* v. *Manley*, 4 Cush. 14, *Fisher* v. *Barrett*, *id.*, 381, and *Crane* v. *Harmon*, 4 E. D. Smith, 339, as being in support of their views. We do not think that these cases are in point. *Dexter* v. *Manley* was a case in which the lessor had reserved the use of a portion of the motive power of a factory, and the ground of the action against him was the use by him of more than was reserved, and in such an irregular manner as to deprive the lessee of the leased premises for the purposes intended. This was a misfeasance, and a breach of the implied covenant for quiet enjoyment, and was so held, not a mere non-feasance as in the case before us. In *Fisher* v. *Barrett* there was an express contract "to furnish sufficient steam power" for certain purposes, and a failure to perform it. The case of *Crane* v. *Harmon* we cannot state, for the reason that the volume containing it is not within our reach.

We are not only without precedent to warrant us in adopting the construction of the instrument which is suggested on behalf of the appellees, but it seems to us entirely inadmissible in view of the known circumstances, constituting a part of the State's public history, and also in view of the plain letter of the contract.

At the date of the lease the canal was a great line of intercommunication, doing a large business, and doubtless neither party contemplated the remotest probability of its abandonment for purposes of navigation. That it would continue to be used therefor seems to have been so confidently relied upon that the lease is destitute of any clause intended to provide for a different event. The plaintiffs did not require any stipulations for their security in that respect, and none whatever were inserted. The lease was of surplus water not needed for navigation, and ample provision was made for a state of affairs which seems to have

been considered not improbable, which would realize the necessity of applying all the water to that purpose. If it be said that the plaintiffs would not have taken the lease without the defendants being bound to furnish the power, if they had foreseen that the canal would become useless and go into decay, for the want of business upon it, it may be assumed with equal truth that the defendants would not, with a knowledge of that fact, have entered into such an engagement. That the plaintiffs took the risk of the canal going into disuse seems to us to result from the fact that having expressly provided, as the lease does, for damages for the non-supply of water, in the single instance where it should be taken for navigation, the instrument is silent as to the damages for such non-supply in any other case. This renders it impossible to say, without disregarding a familiar rule in the construction of contracts, that a want of supply of water, because of a failure to keep the canal in repair, shall also involve a liability implied. Such implication is thus excluded, and hence there can be no such liability.

The judgment is reversed, with costs, and the cause remanded, with directions to sustain the demurrer to the complaint, and to set aside all proceedings subsequent to the filing of the demurrer.

*B. Smith*, *W. Mack* and *J. P. Usher*, for appellants.

*J. E. McDonald* and *A. L. Roache*, for appellees.