## FOX *v.* CINCINNATI.

1. Pursuant to authority conferred by law, the board of public works of a State leased the surplus water of her canals, but reserved the right to resume the use of it, when it should be needed for the purposes of navigation. A statute was subsequently passed whereby one of the canals within certain limits was granted to, and appropriated by, a city for a highway. *Held*, that the lessee was not thereby deprived of his property without due process of law, as the State, so far from assuming an obligation to maintain the canals to supply water-power, had the right, of which every lessee was bound to take notice, to discontinue them, whenever the legislature deemed expedient.

2. The question as to whether the city acted in excess of the grant, and violated the conditions thereto annexed, cannot be re-examined here on a writ of error to a State court.

ERROR to the Supreme Court of the State of Ohio.

The facts are stated in the opinion of the Court.

Submitted by *Mr. Timothy D. Lincoln* and *Mr. Charles Fox* for the plaintiff.

There was no opposing counsel.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

By the laws of Ohio the board of public works was authorized to sell or lease, for hydraulic purposes, the surplus water in the canals of the State not required for the purposes of navigation. This included water passing round the locks from one level to another; but it was expressly provided that no power should be leased or sold, except such as should accrue from surplus water, "after supplying the full quantity necessary for the purposes of navigation." The laws also required that every lease or grant of power should contain a reservation of the right to resume the privilege, in whole or in part, whenever it might be deemed necessary for the purposes of navigation. In case of resumption, the rents reserved were to be remitted or corre-

spondingly reduced.　Rev. Stat. 1880, sects. 7775–7778; act of March 23, 1840, Laws of 1840, p. 174, sects. 20, 21, 22, 23.

The State owned, among others, the Miami and Erie Canal, having one of its termini at the city of Cincinnati, where it connected with the Ohio River through a series of locks, beginning on the east side of Broadway, a street in the city.　A lease was made by the board of public works of the water which passed around one of these locks, known as lock No. 8, for hydraulic purposes.　Provision was made, in accordance with the requirements of the law, for a resumption of the privilege, if deemed necessary for the purposes of navigation, &c.　Fox became the owner of this lease as early as 1855.

On the 24th of March, 1863, a statute was enacted, under which a grant was made to the city of that part of the canal between Broadway and the river, for a public highway and sewerage purposes, but subject to all outstanding rights or claims, if any, with which the grant might conflict.　No work could be done by the city upon the granted premises until its plan of improvement should be approved by the board of public works.　Sect. 2 of the statute authorizing this grant is as follows : —

"The said grant shall not extend to the revenues derived from the water privileges in said canal, which are hereby expressly reserved; and the said grant shall be made upon the further condition that the said city, in the use as aforesaid of all or any of said portion of said canal, shall not obstruct the flow of water through said canal, nor destroy nor injure the present supply of said water for milling purposes, and that said city shall be liable for all damages that may accrue from such obstruction or injury; but it is not intended hereby to relieve the lessees of said canal, or their assignees, from any responsibilities imposed upon them by 'An act to provide for leasing the public works of the State,' passed May 8, 1861, or by the instrument of lease executed in pursuance of said act, except as and to the extent that they may be interfered with, as said city may from time to time, enter upon, improve, and occupy any part of said grant."

In constructing the avenue contemplated by the statute, Fox claimed that the power to be furnished under his lease was destroyed, and he brought this suit against the city to recover

the damages which he alleges he thereby sustained. The defence relied, among other things, on the statute as an abandonment of the canal by the State for the purposes of navigation, and claimed that this amounted to a rescission of the lease. To this he replied that, if the statute had that effect, it was void under the Constitution of the United States, because it deprived him of his property without due process of law and without just compensation. The Supreme Court of the State sustained the law; and, to test the correctness of that decision, he brought this writ of error.

That the State by its grant to the city actually abandoned the canal at the point in question cannot be denied. The use of the property as a public street is clearly inconsistent with all ideas of navigation by water. The single question we have to consider is whether there is anything in the lease under which Fox claims which prevents the State from making such an abandonment without compensation to him. Whether the city has acted in excess of the grant, and violated the provisions of sect. 2 of the statute, so as to render itself liable for damages on that account, is for the State court to determine, and its decision on that question is not reviewable here.

The use of the water for hydraulic purposes is but an incident to the principal object for which the canal was built; to wit, navigation. The large expenditures of the State were to furnish, not water-power, but a navigable highway for the transportation of persons and property. The authority of the board of public works to contract in respect to power was expressly confined to such water as remained after the wants of navigation had been supplied; and it never could have been intended in this way to impose on the State an obligation to keep up the canal, no matter what the cost, for the sole purpose of meeting the requirements of its water leases. There was certainly no duty resting on the State to maintain the canal for navigation any longer than the public necessities seem to require. When it was no longer needed, it might be abandoned; and, if abandoned, the water might be withdrawn altogether. Provision was made for resuming the water and stopping the supply, if the canal was kept up for navigation; but no such provision was necessary in respect to the abandonment

of the whole work, because the right to abandon followed necessarily from the right to build. If the water was resumed while navigation was maintained, no matter how injuriously it affected lessees, all that could be asked of the State was to forego the further collection of rents, or refund a reasonable proportion of such as had been paid in advance. The entire abandonment of the canal could not create any different liability. Every lessee of power took his lease and put up his improvements with full notice of the reserved right of the State to discontinue its canal and stop his supply of water.

This is an accordance with repeated decisions, both in Ohio and other States, and seems to us fully sustained on principle and authority. *Hubbard* v. *City of Toledo*, 21 Ohio St. 379; *Elevator Company* v. *Cincinnati*, 30 id. 629; *Trustees of the W. & E. Canal* v. *Brett*, 25 Ind. 409; *Fishback* v. *Woodruff*, 51 id. 102; *Commonwealth* v. *Pennsylvania Railroad Co.*, 51 Pa. St. 351. We are referred to no case to the contrary.

*Judgment affirmed.*