A. E. Asher *et al.* v. The Hutchinson Water, Light
and Power Company *et al.*

**No. 13,327.**    (71 Pac. 813.)

SYLLABUS BY THE COURT.

1. Cities and City Officers — *Water-works* — *Removal of Mains.*
A contract by ordinance between a city and a water company,
that the latter will lay water-mains and supply the inhabitants
with water on certain streets of the city, may, after such mains
are laid, be so modified and changed by the city and water com-
pany as to require the latter to remove its mains from certain
streets where, in the judgment of the council, public necessity no
longer requires their continuance, to other portions of the city
where public necessity requires that mains should be laid, and in-
junction will not lie, at the suit of an individual, to prohibit the
city and water company from making such change, notwithstand-
ing it may greatly decrease the value of his property.

2. ——— *Injunction by Individual will not Lie.* Where a city
determines that the public welfare will be best subserved by re-
moving to another part of the city certain water-mains upon which
there are seventeen fire-hydrants maintained at public expense,
and where there is no demand for fire protection and but one
private consumer, injunction will not lie, at the suit of such
private consumer, to restrain the removal of such mains, notwith-
standing the removal thereof would render his property practi-
cally valueless for the purpose for which it was improved.

Error from Reno district court; M. P. Simpson,
judge. Opinion filed March 7, 1903. Affirmed.

*George A. Vandeveer, Frank L. Martin,* and *Harry D.
Vandeveer,* for plaintiffs in error.

*H. Whiteside,* for defendants in error.

The opinion of the court was delivered by

Greene, J. : The plaintiffs in error commenced this
action in the court below to enjoin the defendants from
taking up a certain water-main which ran to, and
supplied, plaintiffs' stock-yards with water. A tem-

porary restraining order was granted, which was set aside and an injunction refused.   The plaintiffs prosecute this proceeding.

The Hutchinson water-works were constructed under an ordinance which required the company, and its assigns, to extend its mains and place fire-hydrants along the streets of the city, in addition to those designated in the ordinance, at such times and places as might thereafter be designated by the city. The ordinance also provided that, in addition to furnishing water to extinguish fires, the company, its successors or assigns, should furnish water to the inhabitants living or doing business along the mains or pipes in accordance with such rules and regulations . as might become necessary.   The defendant company became the owner of the water-works and succeeded to the rights, privileges and obligations of the grantees in the franchise.   Afterward the city, by ordinance, extended the water-main on Fourth avenue to the stock-yards, to which main the then owner of the yards attached.   Thereafter the plaintiffs became the owners of the yards.   Subsequently the city passed ordinance No. 402, which provided as follows :

"In addition to furnishing water from the fire-hydrants for the protection and extinguishment of fires, as herein contemplated, the said Hutchinson Water, Light and Power Company, its successors or assigns, shall furnish water to the said city and the inhabitants thereof, living and doing business along the mains and pipes, for all purposes, and in accordance with such rules and regulations as may be deemed necessary to the successful operation of said works."

It was alleged in the petition that the defendant threatened to, and would, unless restrained by the court, take up its main leading to plaintiffs' yards, thus cutting off the water-supply, and thereby rendering·

its property valueless for the purposes for which it was improved and for which it was being used.

The defendant admitted that it intended to take up such water-main, but alleged that in doing so it was acting under the permission and direct authority of the city, and for the purpose of replacing the main and hydrants upon other streets where fire protection is greatly needed and private consumers numerous; that such authority was in the following resolution:

"Be it resolved by the mayor and council of the city of Hutchinson, Kan., that a permit be given the Hutchinson Water, Light and Power Company to remove seventeen hydrants and the water-main upon which they are located from the east end of Fourth avenue line and connections to stock-yards to points designated by the council within the city, said hydrants to be attached to suitable main; also, two hydrants to be removed from the corner of F and Main streets, and one from the lower end of Main street, near the old Missouri Pacific depot, one of said hydrants to be located on suitable main at the corner of Maple and Bigger streets, near the Maple street schoolhouse. The Water, Light and Power Company to dig the trenches and do all the work and bear all of the expense of the removal and relocation of hydrants above mentioned as may be designated by council, and without additional hydrant rental, and the said Water, Light and Power Company is to assume all responsibility and liability that may arise by reason of removal of said hydrants, and shall hold the city harmless by reason of such removal."

"The terms of the above resolution, passed by the council May 10, 1902, hereby accepted."

It was further alleged in the answer that the business carried on at the stock-yards by the plaintiffs was very inconsiderable, and water might be supplied by means of a gas-engine, at a cost not to exceed $500.

The city filed a disclaimer. At the trial oral evi-

dence was introduced upon all questions involved. The court found generally for defendants.

The plaintiffs contend that, because a water-main had been laid to their yards from which they were being supplied with water at the time of the passage and acceptance of ordinance No. 402, such ordinance became a contract between the water company and each individual then doing business along its mains, by which the company became obligated to furnish water to such persons for all purposes during the life of its contract; that therefore injunction would lie by one on the line of its mains to prohibit it from removing such mains, or from doing any other act which would place it in such position that it would be unable to perform that part of its contract. This contention might be conceded, if the company were acting without authority from the city. Mandamus will lie to compel a water company to supply water to one on its mains upon his compliance with its reasonable rules and regulations, and, upon the same principle, injunction will lie by the individual to prevent a water company from removing its mains without authority from the city, if such removal will deprive it of the means of fulfilling its contract to the individual.

It appears, however, that by the resolution of May 10, 1902, the city, in the exercise of its governmental powers, determined it was to the best interest of the general public that the main leading to the plaintiffs' stock-yards and the fire-hydrants located thereon should be removed to other portions of the city, where fire protection was greatly needed and private consumers numerous. It therefore gave the company permission to take up such main and fire-hydrants,

and ordered that they be relocated on such other streets as it might thereafter direct.

"Where the city council has power to act in a given case, and the mode of action is not prescribed by charter, it may proceed either by resolution or by ordinance." (Smith, Mun. Corp. § 567 ; *The City of Crawfordsville et al. v. Braden*, 130 Ind. 149, 28 N. E. 849, 14 L. R. A. 268, 30 Am. St. Rep. 214 ; *Smith v. The State*, 64 Kan. 730, 68 Pac. 641.)

In view of this resolution, the company was acting under direct authority from the city. Water-works are public utilities. The power to own or otherwise provide a system of water-works, conferred upon cities, has relation to public purposes, and for the public, and appertains to the corporation in its political or governmental capacity. They are supported at public expense, and are subject to the exclusive control of the city in its governmental capacity, for the convenience, health and general welfare of the city. The city determines the amount of water-mains, where to be laid, and the number and location of fire-hydrants. Over these the individual has no control. In the exercise of this political power the city has discretion, with which the courts have no right to interfere.

In such cases there is no contractual relation between the city and the individual upon which the principle contended for by plaintiffs can rest. It is true that, by some of the conditions of the contract, the individual is collaterally interested, but as to such the contractual relation is not between the city and the individual, but between the water company and the individual. An individual can acquire no vested right, as against the public, in the continued service of a public utility. Such a doctrine once admitted would destroy the convenience as a public utility ; it would

then become hampered and subject to the control of the individual and made to subserve such interests, to the detriment of the public welfare.

It follows that there was no error in refusing the injunction.

The judgment of the court below is affirmed.

All the Justices concurring.