BRYAN v. LOUISVILLE & N. R. CO.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1917. Rehearing Denied October 22, 1917.)

No. 4801.

1. RAILROADS ☞54—RIGHT TO CHANGE LOCATION OF ROAD.
   Where a railroad has been constructed and operated for 40 years, it could not be changed to a location several miles from the original location, for a distance of 20 miles, without legislative authority.

2. COURTS ☞366(7)—DECISIONS OF STATE COURTS—FORCE IN FEDERAL COURTS.
   Const. Ala. 1901, § 246, provides that no railroad in existence at the time of the ratification of such Constitution shall have the benefit of any future legislation, other than in execution of a trust, except on the condition of complete acceptance of all the provisions of that article. Held, that the holding of the Supreme Court of Alabama that no written acceptance of the Constitution is necessary is binding on a federal court.

3. RAILROADS ☞54—RIGHT TO CHANGE LOCATION OF ROAD.
   Where a Kentucky railroad corporation complied with Const. Ala., § 232, imposing conditions on foreign corporations doing business in the state, and for many years transacted business in Alabama, and availed itself of the benefits of the general statutes of that state, it accepted the provisions of the Constitution of 1901 as required by section 246, so as to entitle it to the right given to railroad corporations to relocate their line of railroad by Act Ala. Feb. 18, 1903 (Laws 1903, p. 131), as amended by Act. Aug. 20, 1909 (Laws 1909, p. 62).

4. RAILROADS ☞33(1)—FOREIGN CORPORATIONS—DOMESTICATION.
   Acts Tenn. Dec. 4, 1851 (Laws 1851–52, c. 23), giving a Kentucky railroad corporation authority to construct a railroad between certain points in Tennessee, and to exert some of its corporate powers, and recognizing the railroad as a Kentucky corporation, did not make it a corporation of both Kentucky and Tennessee.

5. RAILROADS ☞54—RIGHT TO CHANGE LOCATION OF ROAD.
   Where the charter of a Kentucky railroad corporation, though not in express terms, authorizing it to relocate its line of road, contained no prohibition against such relocation, the company could relocate its line of road in Alabama, providing the laws of Alabama permitted it to do so,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as the change in location is peculiarly a subject of local control, especially as the Kentucky statutes authorize railroad companies to relocate their roads.

6. RAILROADS ⊜⇒54—RIGHT TO CHANGE LOCATION OF ROAD.

Where the original termini of a railroad were Decatur and Montgomery, a change in such road for about 20 miles, to a new location several miles distant, was not in violation of Act Ala. Feb. 18, 1903, as amended by Aug. 20, 1909, authorizing railroad companies to relocate their line, but providing that they shall not change the termini or make an entire departure from the original line between such termini, as the statute refers to the original termini of the road, and not to points on the line between which there is a relocation of the track.

7. RAILROADS ⊜⇒54—RIGHT TO CHANGE LOCATION OF ROAD.

Though some of the land upon which a railroad was constructed was granted by the United States to the state for the benefit of such road, the permission of Congress was not necessary in order to lawfully relocate the line of road, this being a matter for state legislation.

8. RAILROADS ⊜⇒72(3)—CONTRACTS AS TO LOCATION OF ROAD—PERFORMANCE OR BREACH.

Where deeds to a railroad right of way recited that the building, erecting, and running of the railroad on and along the land was a part of the consideration, the building of the road on such land and its maintenance for 40 years was a compliance with the contract, and its removal to a new location after more than 40 years was not a breach of the contract.

9. RAILROADS ⊜⇒72(3)—CONTRACTS AS TO LOCATION OF ROAD—CONSTRUCTION.

Where a railroad company conveyed to plaintiff land in the immediate vicinity of its road, which he devoted to the cultivation, and growth of commercial peach and apple orchards, a recital in the deed that valuable improvements to be put on the land conveyed were a part of the consideration, did not amount to a contract on the part of the railroad to forever maintain and operate its line of road in its then condition, though the change in location of the road greatly damaged plaintiff's fruit business.

10. RAILROADS ⊜⇒54—CHANGE OF LOCATION—INJURY TO MEMBERS OF PUBLIC.

A change in the location of a railroad, under legislative authority, gives a member of the public no common-law right to damages, any injury sustained by him being damnum absque injuria.

11. EMINENT DOMAIN ⊜⇒2(1)—ACTS CONSTITUTING EXERCISE OF POWER OF EMINENT DOMAIN.

A railroad company, by changing the location of its road did not take, injure, or destroy property in the vicinity of the old location, within Const. Ala. 1901, § 235, providing that municipal and other corporations, invested with the privilege of taking property for public use, shall make just compensation for the property taken, injured, or destroyed by the construction or enlargement of their works, highways, or improvements.

12. PLEADING ⊜⇒339—PLEA IN ABATEMENT—WITHDRAWAL—DISCRETION.

It was within the trial court's discretion to allow defendant to withdraw its plea in abatement and file an answer, especially where, on plaintiff's own theory, a plea in abatement was an unauthorized pleading.

13. APPEAL AND ERROR ⊜⇒1070(1)—TRIAL ⊜⇒323—HARMLESS ERROR—VERDICT.

A verdict signed by one juror, by direction of the court, was sufficient, and plaintiff was not prejudiced because the jurors were not all required to sign or permitted to select their own foreman to sign it for them.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Edward Jefferson Bryan against the Louisville & Nashville Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

S. Mayner Wallace and Shepard Barclay, both of St. Louis, Mo., for plaintiff in error.

Edward S. Jouett, of Louisville, Ky., and Harold R. Small, of St. Louis, Mo., for defendant in error.

Before CARLAND and STONE, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. The parties to this action will be named as in the trial court. The plaintiff sued the defendant to recover damages which he alleged resulted from the abandonment by defendant of its main line of road from New Castle to Bangor, Blount county, Ala. At the trial of the case counsel for defendant moved the court to direct a verdict in its favor. The motion was granted, and the plaintiff has brought the case here assigning error. The plaintiff stated his causes of action in two counts.

The first count, after alleging the purchase of about 2,600 acres of land in Blount county, Ala, in the immediate vicinity of Reid's station, on the line of the South & North Alabama Railroad Company, hereafter called "South & North," and the cultivation and growth of commercial peach and apple orchards thereon, the purchase from said railroad company of its line of railroad by the Louisville & Nashville Railroad Company, hereafter called the "Louisville & Nashville," and the assumption by the latter of all the duties and obligations which could be required of the South & North as a common carrier, further alleged as follows:

"Plaintiff further states that at and before his purchase of said land, and during the development thereof, as stated, defendant contracted and agreed with plaintiff, in consideration of plaintiff's making and developing said investment and furnishing to defendant the tonnage therefrom, that, for, as long a time as plaintiff produced said tonnage, said defendant would maintain and operate said line of railroad through and along his said land, in substantially the same way as was then being maintained and operated, and furnished to plaintiff the fast-freight and express service thereon for the products of said orchards to the markets of the United States and adequate transportation service for all the tonnage produced on said lands; but that on or about November 16, 1914, said defendant, wholly disregarding its said obligation to plaintiff, and in violation of its said contract and assurances, and notwithstanding that plaintiff had at all times offered, and was then continuing to offer, to defendant a large, and the full amount of said tonnage, discontinued and ceased operating that part of the said line of railroad through and along plaintiff's said property, at said Reid's station, and denied and still denies to plaintiff said fast-freight and express service for the products of said orchards, and all railroad facilities for all tonnage produced and to be produced on said land, and has since removed part of the roadbed of said line of railroad along plaintiff's said property and north of said Reid's station, and on account of the mountainous condition of said county and the topography thereof, and the peculiar location of plaintiff's said land, and because of the fact that there is no other accessible line of railroad therein, or means whereby any of the tonnage produced on said land may be carried away therefrom, has closed thereby all of said markets to the products of plaintiff's said orchards, and thereby destroyed the said value thereof."

The second count of the complaint, after making the allegations of the first count a part thereof by reference, alleged that plaintiff's injury was special in kind and different and greater in degree than that, if any, suffered by the public, and that under general law, as well as

under the laws of Alabama, plaintiff might not be so injured and damaged by defendant without just compensation being made.

We have carefully read and considered the evidence in the record, and are satisfied that there was sufficient evidence to take the case to the jury upon the question of damages, and, upon the assumption that defendant was bound to furnish the plaintiff with adequate shipping facilities as alleged in his complaint, the question whether such facilities were furnished or offered by defendant to plaintiff during the season of 1915, and prior to the abandonment of the orchards by plaintiff on December 2, 1915, was, upon the evidence before us, clearly a question for the jury. We are also satisfied that taking the evidence upon the question of whether the defendant, either expressly or impliedly, agreed with plaintiff, by correspondence and mutual business relations, to maintain and operate its line of railroad through and along his said land, in substantially the same way as the same was then being maintained and operated, and to furnish plaintiff the shipping facilities stated in the complaint, with all legitimate inferences which the jury might rightfully draw therefrom, there was not sufficient evidence to take the case to the jury upon that question. The most that can be said upon this phase of the case is that the defendant, prior to the abandonment of its line of road, was desirous that the plaintiff should make a success of his business of fruit raising, as tonnage for the road would be produced thereby. The building of the spur track to connect with the tramway of plaintiff, and the sending of an agent to supervise the shipping of fruit during the shipping season, were both consistent with this desire and purpose.

It is claimed, however, that under the facts stated in the complaint, the defendant had no legal power or authority to abandon its main line, which passed near the orchards of the plaintiff, and relocate the same as hereinafter stated, and that, such abandonment and relocation being illegal, the defendant is liable for any damage resulting therefrom to the plaintiff. This is the important question in the case. The facts bearing upon the question are as follows:

The South & North was incorporated by a special act of the General Assembly of Alabama, February 17, 1854. The railroad constructed by it extended from Decatur, Ala., through Birmingham, to Montgomery, Ala., a distance of about 182 miles. Speaking without reference to entire accuracy, the line of this railroad from New Castle, Ala., to Bangor, Ala., at the time of its abandonment, November 16, 1914, had been constructed and operated for about 40 years. From 1872 to January 21, 1914, the road was controlled and operated by the defendant, the latter from 1900 owning all the preferred and 80 per cent. of the common stock. This condition of affairs arose from the fact that the Louisville & Nashville furnished the money to build the road. On January 21, 1914, the South & North, for certain valuable considerations mentioned in the deed of conveyance, conveyed all its interests in its line of railroad to the defendant, the latter assuming "all the duties and obligations which could or can be lawfully required of the parties of the first part as a common carrier, * * * and the assumption of all other indebtedness of the party of the first part owing by contract with any person, firm, or corporation or on account of injury

to persons or damage to property and all indebtedness of any other char-
acter whatsoever." On November 16, 1914, the defendant discontin-
ued the operation of the old line of the South & North from New
Castle to Bangor, and commenced to operate the new double-track
line between the points mentioned, which had been built and con-
structed during the previous two years. The distance between the
points mentioned over the new line is about 20 miles, being about 2
miles shorter than the distance between the same points over the old
lines. The new line is distant from Reid's station on the old line 4.9
miles. The average distance of the new line from the old line between
the points mentioned is about 3 miles. The intervening space between
the two lines is rough and mountainous, to such an extent as to be inac-
cessible by ordinary conveyance.

The new line departs entirely from the old line between the points
mentioned. The considerations which led to the construction of the
new line were to straighten the line of road, reduce curvature, and
obtain lower grades, in order to facilitate the movement of business,
reduce delays, and improve safety, and greatly increase the capacity
of the road for handling business. The plaintiff when on the stand
was asked the following question: "You admit, do you not, that the
building of that double track through there on that straighter, shorter
line is a matter of material interest and advantage to the general pub-
lic, both in the matter of safety and expedition of service, freight and
passengers?" The witness answered, "I do."

The plaintiff, relying upon the continuance of the shipping facilities
furnished by the South & North as operated by the Louisville & Nash-
ville, had, during the period of about 11 years prior to November 16,
1914, cultivated and grown on the land purchased by him, as before
stated, commercial peach and apple orchards, known as the "Mont
Eyrie Orchards." A portion of the orchards were located on land
through which the original right of way of the South & North had
been granted, a part of the consideration for such right of way being
that the South & North would build a railroad on and along said lands.

Plaintiff alleges that the abandonment of the old line of road de-
stroyed the value of these orchards; hence this suit. In the treatment
of the question as to the authority of the Louisville & Nashville to
abandon the old line and relocate the same as appears in the evidence,
we put to one side the question as to whether the defendant offered to
furnish the plaintiff, prior to his abandonment of his orchards in De-
cember, 1915, adequate shipping facilities by way of Warrior and Mon-
mouth, with switching service over a portion of the old line to the old
station at Reid's, as this question would only be material in case the de-
fendant was bound to furnish adequate shipping facilities to plaintiff,
and, in any event, it was a question for the jury under the evidence.

[1] We think it must be conceded that a railroad which has been
constructed and operated for 40 years may not be relocated in the man-
ner in which it is shown by the evidence the old line of the South &
North was relocated, without legislative authority. Brown v. Railway
Company, 126 Ga. 248, 55 S. E. 24, 7 Ann. Cas. 1026; Railway Com-
pany v. Kirkland, 129 Ga. 552, 59 S. E. 220; Lusby v. Kansas City, etc.,
R Co., 73 Miss. 360, 19 South. 239, 36 L. R. A. 510.

In Brown v. Railway Co., supra, it was said:

"It is generally held that where a railroad company to which has been given the power to choose its particular route between designated termini, has exercised its discretion in this regard, its power of choice is exhausted, and it cannot subsequently change its location without express legislative authority. Thus a change cannot be made for reasons of convenience, or expediency, or economy merely."

A great number of authorities are cited to support this statement of the law. In L. R. A. 1915A, 549, it is said:

"The general rule seems to be that a railroad cannot abandon its road or a branch, even though it may be operated at a loss, and cases which are apparently in conflict with this rule will be found to have turned on special circumstances that warranted the decision."

The defendant in this case does not contend that the law is otherwise, but seeks to show that there was legislative authority to make the relocation described in this case, both as to the South & North and the Louisville & Nashville. It is conceded by counsel for defendant that neither the charter of the South & North nor the Louisville & Nashville in express terms gave authority to make the relocation of which complaint is made. It is, however, contended that legislative authority was conferred both upon the South & North and Louisville & Nashville to make the change by certain legislation of the General Assembly of Alabama. Section 246 of the Constitution of Alabama of 1901 reads as follows:

"No railroad, canal, or transportation company in existence at the time of the ratification of this Constitution, shall have the benefit of any future legislation by general or special laws other than in execution of a trust created by law or by contract. except on the condition of complete acceptance of all the provisions of this article."

February 18, 1903, the Legislature of Alabama enacted the following statute:

"Section 1. Be it enacted by the Legislature of Alabama, that any railroad corporation owning and operating a railroad in this state, is hereby authorized and empowered to relocate any portion of its line of railroad for the purpose of straightening or otherwise improving the same, and for that purpose, to acquire by gift, purchase or by condemnation in the mode prescribed by law, all necessary rights of way over lands, and to abandon its original or constructed line: Provided, however, that nothing herein contained shall be so taken or construed as to authorize any railroad corporation to change the termini of its railroad, or to make an entire departure from its original line between such termini." Laws 1903, p. 131.

This statute appears in the codification of the Alabama Laws for 1907 as section 3484. The section was amended August 20, 1909, by the addition of other provisions, but the law of 1903 was retained, and reads as follows:

"* * * and may relocate any portion of its line for purposes of straightening or otherwise improving the same and for that purpose, may acquire by gift, purchase or condemnation all necessary rights-of-way over lands, and abandon its original or constructed line, but it shall not change its termini, or make an entire departure from its original line between such termini." Laws 1909, p. 62.

The law last above quoted is the specific authority under which the defendant acted. It is claimed, however, by counsel for the plaintiff,

that the South & North or the Louisville & Nashville never accepted the Constitution of Alabama within the meaning of section 246 above quoted, so as to be entitled to the benefit of the law of 1903 as amended in 1909. When the Louisville & Nashville took over the operation of the South & North in 1872, for the reason that it had furnished the money to build the road, a general statute of Alabama permitted a corporation owning a railroad to allow another company to operate it, and the question arose as to whether the South & North, having been created under a special charter, was authorized to permit this operation of its road by the Louisville & Nashville, since the South & North had never formally accepted the provisions of the Constitution above quoted, and was not authorized by its special charter or the amendments thereto to permit the operation of its road by another company. Out of this controversy arose the litigation which was involved in Louisville & Nashville R. R. Co. v. State ex rel. Gray, 154 Ala. 156, 45 South. 296. It was decided in this case that a written acceptance was not necessary under the terms of section 246, supra, and that the South & North had accepted the provisions of the Constitution of Alabama, within the meaning of said section, by availing itself of the benefits of the general statutes of Alabama. In the same case the question was raised and decided relative to the right of the Louisville & Nashville, a Kentucky corporation, to take the benefit of the Alabama law, and operate the South & North. There is a provision of the Alabama Constitution of 1901 (section 232) reading as follows:

"No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the Secretary of State a certified copy of its articles of incorporation or association. Such corporation may be sued in any county where it does business, by service of process upon an agent anywhere in the state. The Legislature shall, by general law, provide for the payment to the state of Alabama of a franchise tax by such corporation, but such franchise tax shall be based on the actual amount of capital employed in this state. Strictly benevolent, educational, or religious corporations shall not be required to pay such a tax."

The Supreme Court of Alabama in the case last cited, after considering the amendments to the charter of the Louisville & Nashville, passed by the General Assembly of Kentucky, March 6, 1878, and January 27, 1880, giving to the Louisville & Nashville authority to take over the operation of the South & North, said:

"Commencing on the 24th day of March, 1887, the defendant (Louisville & Nashville) has done all that foreign corporations are required to do by the Constitution and laws of Alabama to entitle it to do business in the state."

It appears from the record that on May 21, 1907, the defendant filed in the office of the Secretary of State for Alabama a certificate signed by its first vice president, designating Montgomery, Ala., as its known place of business in said state, and appointing George W. Jones its agent upon whom service of process might be made and all legal notices served for all the purposes contemplated by the laws of Alabama. The record also shows that the defendant, prior to the relocation of its line of road, had filed with the Secretary of State of Alabama duly certified copies of its charter, and all amendatory acts relating thereto, as granted and passed by the state of Kentucky. It is further contended,

however, by counsel for plaintiff, that although the defendant has performed all the acts required by the Constitution and laws of Alabama to authorize it to do business in said state, it does not appear that it has accepted the provisions of the Constitution of Alabama, and was therefore not entitled to the benefit of the relocation statute.

[2-4] We are of the opinion that the Gray Case, holding that no written acceptance of the Constitution is necessary, is binding on us, and that the same facts which were held to show the acceptance of the provisions of the Constitution by the South & North, must be held to show the acceptance by the Louisville & Nashville. It transacted business in the state of Alabama for many years, and availed itself of the benefits of the general statutes of that state. We have no doubt that the defendant having complied with section 232 of the Constitution of Alabama, it is entitled to do business in said state, and that by its conduct and acts, extending over many years, it must be held to have accepted the provisions of her Constitution. The defendant is a corporation of the state of Kentucky, and not, as claimed by plaintiff's counsel, a corporation of both Kentucky and Tennessee, as was held in Goodlett v. Louisville & Nashville R. R. Co., 122 U. S. 391, 7 Sup. Ct. 1254, 30 L. Ed. 1230. The law of Tennessee giving the defendant authority within her limits to construct a railroad between certain points, and to exert some of its corporate powers, recognizes the defendant as a Kentucky corporation. Tennessee Act, December 4, 1851 (Laws 1851–52, c. 23).

[5] The charter of defendant granted by the state of Kentucky does not give authority in express terms to relocate its line of road, but it contains no prohibition against so doing. Hence it could relocate its line of road in the state of Alabama, providing the laws of Alabama permitted it to do so, as the change in the location of a railroad is peculiarly a subject of local control. The Kentucky act of March 6, 1878 (Laws 1877–78, c. 278), gave defendant authority to operate, lease, or purchase upon such terms or in such manner as it deemed best any railroad in any other state or states. It appears also that by subsection 4 of section 768 of the Kentucky statutes, enacted in 1894, it was provided that a railroad company "may, for the purpose of avoiding annoyance to public travel or dangerous or difficult grades or curves, or unsafe or insecure grounds or foundations, or for other reasonable cause, change the location * * * of any portion of its road; but shall not, except as otherwise provided, depart from the general route prescribed in the articles of incorporation.". The defendant was entitled to the benefit of this law for the reason that on July 14, 1902, it literally complied with section 190 of the Kentucky Constitution, and also section 570 of the Kentucky statutes, imposing certain conditions upon the performance of which the defendant would be entitled to the benefit of the statute. So it may be truthfully said that the act of relocation by defendant was not only in accordance with the laws of Alabama, but in line with the public policy of Kentucky.

[6, 7] Counsel for the plaintiff further contends that, even if it be held that the defendant was entitled to the benefit of the relocation statute of Alabama, it did not comply with that statute. In order to sustain this position, it is urged that the law provided that there should

244 F.—42

not be an entire departure from the original line of road between the termini of the same, and, in order to make this provision of the law applicable, it is claimed that New Castle and Bangor were the termini of the road; but this contention is not sound. The law means the original termini of the South & North, and not two points on the line between which there is a relocation of the track. The termini of the original South & North were Decatur and Montgomery. There is no merit in this contention. It is also claimed, as we understand the argument, that because the United States granted to the state of Alabama for the benefit of the South & North some of the land upon which the road was constructed, that permission by Congress was necessary in order to lawfully relocate the line of road. There is no merit in such contention. It was a matter for state legislation.

On July 6, 1914, the Railroad Commission of Alabama made the following order:

"Proposed Transfer of Train Service, Louisville & Nashville Railroad Company, from the Old Single Track to the New Double Track, between Bangor, Ala., and New Castle, Ala.

"Whereas, the Railroad Commission of Alabama, by its general order No. 13, dated December 6, 1907, and by its general order No. 17, dated May 3, 1909, provided that:

"'No railroad company operating in this state shall discontinue any passenger train or service now being maintained without the consent and approval of the Commission;' and,

"Whereas, the Louisville & Nashville Railroad Company represents to the Commission that it has and will discontinue certain service heretofore maintained, by reason of the fact that it has and will relocate its line in part, changing the grade, departing entirely from the line heretofore existing between certain points, installing double tracks, discontinuing certain service upon certain portions of the line heretofore existing between Bangor, Alabama, and New Castle, Alabama, as shown by Exhibit A, hereto attached and made a part hereof, and inaugurating in lieu thereof similar service on proposed new double tracks, all of said changes in service and operation having been made and contemplated to be made in conformity with the statutes of Alabama in such case made and provided:

"Now, therefore, the said Railroad Commission of Alabama does hereby consent to and approve of the said discontinuance of service, and the proposed continuance of service, including the proposed rearrangement of tracks, grades, plans, and service as set forth in the said Exhibit A.

"Done by the Railroad Commission of Alabama, at the capital in the city of Montgomery, this 6th day of July, 1914.

　　　　　　　　　　　　　　　"Railroad Commission of Alabama,
　　　　　　　　　　　　　　　　　"By Chas. Henderson,
　　　　　　　　　　　　　　　　　　"Frank N. Julian,
　　　　　　　　　　　　　　　　　　"Leon McCord,
　　　　　　　　　　　　　　　　　　　"Railroad Commissioners."

While the Railroad Commission could not authorize the defendant to relocate its road in violation of the laws of Alabama, the order above quoted is not only persuasive that no such law was violated, but it would seem to be conclusive upon the proposition as to whether the relocation was for the benefit of the public. We have no doubt, upon the facts appearing in the record, that the defendant had legal authority to relocate its line of road as detailed in the evidence. Conceding that the defendant had legal authority to do so, it is further contended by counsel for plaintiff that such relocation breached the contracts arising out of the right of way agreements.

[8] It appears from the record that, when the South & North constructed its line of road in 1871–2–3, it bought a right of way through six small parcels of land which now constitute a part of the body of 2,600 acres owned by the plaintiff. The right of way deeds or contracts, after reciting the money consideration, contained the following language: "And for further consideration of their building and erecting and running their railroad on and along" the described parcel of land. Not stopping to consider whether these recitals are conditions subsequent or covenants running with the land, we think that under the decision of the United States Supreme Court in Texas & Pacific Ry. Co. v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385, the agreement must be held to have been complied with under the facts in this case. The South & North did build its line of road on and along the lands specified and maintained it for 40 years. It was decided in the Marshall Case, where the contract was to permanently locate carworks and machine shops at the city of Marshall, that the word "permanent" did not mean forever, lasting forever, or existing forever. In this case the railroad company had complied with its agreement for eight years, and it was held to be a substantial compliance with the contract. In Texas & Pacific Ry. Co. v. Scott, 77 Fed. 726, 23 C. C. A. 424, 37 L. R. A. 94, it was said:

"It must be that such an agreement is made subject to the general exigencies of business, the public interest, and to the change, modification, and growth of transportation routes, as these may affect the requirements of the railway company's business."

[9] Something is claimed also in regard to the recital in defendant's deed conveying about 520 acres to the plaintiff. This recital, in addition to the money consideration, reads, "valuable improvements to be put on the land conveyed." In regard to this it may be said that the defendant is not complaining in regard to a failure of consideration, and, standing alone or with the other facts in the case, it does not make out a contract on the part of the defendant to forever maintain and operate its line of road in its then location.

[10] The change in the line of road being, as we have found, lawful, and there being no contract for the continuance of the road in its original location, counsel for plaintiff urges in this situation the proposition that a member of the public has such a vested interest in the continuance of a railroad location that he is entitled, upon its removal, to recover damages either at common law or upon the constitutional guaranty of compensation for property taken for public use. No authority is cited which, in our opinion, sustains the proposition stated, nor have we been able to find any. On the contrary, the rule seems to be established that where there is legislative authority to do an act, omitting for the present cases of the exercise of the power of eminent domain, if in the doing of it harm comes to an individual it is not a wrong for which the law gives a remedy. It is damnum absque injuria. A very instructive case on this question, as it was a case of railroad removal, is Dewey et al. v. Atlantic Coast Line Ry. Co., 142 N. C. 302, 55 S. E. 292. We quote the following excerpt from the opinion of the court:

"The defendants, having legislative authority to make the proposed change, are acting within their right. So far as now appears, they are only doing, or

proposing to do, 'a lawful thing in a lawful way,' and in such case, if harm comes to a third person, it is not a wrong for which the law will afford redress. It is damnum absque injuria. Thomason v. Railway Co., 142 N. C. 318, 55 S. E. 205 (plaintiff's appeal at this term); Broom's Legal Maxims (8th Ed.) p. 200; Pollock on Torts (7th Ed.) pp. 126, 127; Am. & Eng. Ency. (vol. 8) p. 697. The doctrine is well stated in this last citation as follows: 'It may be stated as a general rule that if the Legislature, acting within its constitutional limitations, directs or authorizes the doing of a particular thing, the doing of it in the authorized way and without negligence cannot be wrongful. If damage results as a consequence of its being done, it is damnum absque injuria, and no action will lie for it.' * * *

"It is not necessary, however, that the power to change a route should be given in the charter or a direct amendment thereto; but, as stated in one of the authorities, 'it may be given by charter or by special enactment, or by the general railroad laws of the state.' * * *

"Where, as in this case, the railroads are proceeding to do an authorized act, and in a lawful manner, there is no legal wrong done the plaintiffs, and the judge below was right in denying relief. There is no error, and the judgment below is affirmed."

In Jones v. Newport News, 65 Fed. 736, 13 C. C. A. 95, the Court of Appeals of the Sixth Circuit, Judge Taft delivering the opinion of the court, said:

"The proposition put forward on plaintiff's behalf is that when a railroad company permits a switch connection to be made between its line and the private warehouse of any person, and delivers merchandise over it for years, it becomes part of the main line of the railroad, and cannot be discontinued or removed, and this on common-law principles and without the aid of a statute. It may be safely assumed that the common law imposes no greater obligation upon a common carrier with respect to a private individual than with respect to the public. If a railroad company may exercise its discretion to discontinue a public station for passengers or a public warehouse for freight without incurring any liability or rendering itself subject to judicial control, it would seem necessarily to follow that it may exercise its discretion to establish or discontinue a private warehouse for one customer."

Another leading case to the same effect is College Arms Hotel Co. v. Atlantic Coast Line Ry. Co., 61 Fla. 553, 54 South. 459. In this case it was said:

"Persons who own property at a town adjoining a railroad depot, and who, relying upon the continuance of the depot at the place, have improved the property, and 'have enjoyed special facilities in the conduct of their business' incident to such location, have no right, on the ground of special and peculiar injury to their property rights, to enjoin the enforcement of an order of the railroad commissioners for removal of the depot to another point at the town. * * * Property losses incident to the removal of a depot, that result in consequence of the exercise of lawful authority, do not afford a right of action, where no trespass is committed upon private property. In the authorized removal of a depot no law is violated, as in case of excessive charges or unjust discriminations."

The plaintiff having no contract, either express or implied, that the defendant would continue to maintain its road and run its trains, and the railroad having been constructed by legislative authority for the benefit of the public, and not for the particular benefit of any individual composing the public, there is no breach of contract or breach of duty, and hence no right of action. Kinealy, etc., v. St. Louis, etc., Ry. Co., 69 Mo. 658.

[11] We will now consider the case with reference to the eminent domain theory. The Constitution of Alabama provides (section 235, art. 12) as follows:

"Municipal and other corporations and individuals invested with the privilege of taking property for public use shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements."

The defendant did not take, injure, or destroy any property of the plaintiff by the construction or enlargement of its works, highways, or improvements, within the meaning of the Constitution. On this question Nichols, in his work on the Power of Eminent Domain, at section 142 uses the following language:

"An owner of land has no private rights in the continued existence of any public work other than a highway on or over his land. No action lies when a state capitol (Edwards v. Lesueur, 132 Mo. 410, 33 S. W. 1130, 31 L. R. A. 815, or a college (Bryan v. Board of Education, 151 U. S. 639, 14 Sup. Ct. 465, 38 L. Ed. 297) is moved away, when water pipes (Asher v. Hutchinson, etc., Co., 66 Kan. 496, 71 Pac. 813, 61 L. R. A. 52) in the streets are removed, or when a railroad (Kinealy v. St. Louis, etc., Ry. Co., 69 Mo. 658; Rockafeller v. Northern Central Ry. Co., 212 Pa. 485, 61 Atl. 960), or canal (Fox v. Cincinnati, 104 U. S. 783, 26 L. Ed. 928; Trustees v. Brett, 25 Ind. 409; Fishback v. Woodruff, 51 Ind. 102; Whitney v. New York, 96 N. Y. 241; Hubbard v. Toledo, 21 Ohio St. 379; Little Miami Co. v. Cincinnati Railroad Co., 30 Ohio St. 629; Commonwealth v. Pennsylvania Railroad, 51 Pa. 351; Fredericks v. Pennsylvania Canal Co., 109 Pa. 50, 2 Atl. 48; see, also, In re Water Front, 190 N. Y. 350, 83 N. E. 299, 16 L. R. A. [N. S.] 335), is discontinued, provided the change is made by authority of law."

Mills on Eminent Domain, § 317; Asher v. Hutchinson Water Line & Power Co., 66 Kan. 496, 71 Pac. 813, 61 L. R. A. 52; Fox v. Cincinnati, 104 U. S. 783, 26 L. Ed. 928. We find no merit in this contention.

[12] It is next urged that the court erred in allowing defendant to withdraw its plea in abatement and file an answer to the complaint. On plaintiff's own theory a plea in abatement was an unauthorized pleading in Missouri, and it was entirely within the discretion of the court to allow it to be withdrawn and an answer to be filed as a matter of common justice.

[13] It is next urged that the court erred when it directed a verdict for the defendant because it asked one of the jurors only to sign the verdict. The juror who was so requested signed it, and it is claimed that it is not such a verdict as will support the judgment. It is urged that whether a case is submitted to a jury on the facts or whether the court directs a verdict the jury must act, and that there can be no verdict without the whole jury acts. It is usual for the trial judge, when a verdict is directed, to ask the jury to select a foreman to sign the formal verdict, but the whole proceeding is a mere matter of form. The record shows that the juror who signed the verdict was the foreman, and we conclude that the request by the court that the juror sign the verdict, being a mere matter of form, was entirely sufficient without the jury selecting their own foreman. The jury could not act contrary to the decision of the court. All they could have done would have been to all sign the verdict or select a foreman to sign it for them.

The verdict returned appears to be signed by the foreman, and whether the court or jury named the foreman would in no way prejudice the plaintiff.

We have considered all the points argued by counsel, and are of the opinion that the judgment below must be affirmed; and it is so ordered.