Merrell, J.
The claim here urged is in substance this: that pending the term of a gas-rate ordinance, passed by a city council, and accepted by a gas company, it is incompetent for the parties to abrogate by mutual agreement the contract thus entered into. In support of this claim it is insisted: first, that the consumers of* gas who are citizens of the municipality in question have a vested interest in the rate contract for the term thereof; and, second, that certain statutory provisions forbid, directly or by necessary implication, the abrogation of such contract.
The theory that the individual consumer has a vested interest in a contract made by his city with a public utility, and in the provisions thereof with respect to rates for service, finds no support in the authorities. The individual citizen is in no exact *148 sense the direct beneficiary of such contract. The benefits and rights accruing to him thereunder are his by virtue of his membership in the municipal corporation. The latter, embodying the collective citizenship, and representing the general welfare of its citizens, as distinguished from the sum total of their divergent private interests, is therefore the real as well as the nominal party in interest in such contract.
As said in Asher et al. v. The Hutchinson Water, Light & Power Co., 66 Kans., 496, at page 500:
“An individual can acquire no vested right, as against the public, in the continued service of a public utility. Such a doctrine once admitted would destroy the convenience as a public utility; it would then become hampered and subject to the control of the individual and made to subserve such interests, to the detriment of the public welfare.”
In passing it may be observed that the contracts of a municipal corporation, unless limited by positive provisions of statute law, are governed by the same principles as apply to contracts between individuals. As between the latter, parties competent to contract are competent to modify or to abrogate the contracts, so far as executory, between them made, the consideration therefor being found in the mutual waivers of rights thereunder. Page on Contracts, Section 317.
It follows that the ordinance of the city of Find-lay of October 18, 1918, abrogating, with the consent of the gas company, the prior contract, still partly executory, made by the passage and acceptance of the rate ordinance of June, 1914, violated *149 no principle of the law of contracts, and was not open to attack on general grounds by the individual taxpayer or gas consumer, suing either in his personal right, or, as here, on behalf of the public. Asher v. Hutchinson Water Co., supra; Little Rock Railway & Electric Co. v. Dowell, 101 Ark., 223; Blankenburg v. Philadelphia Rapid Transit Co., 228 Pa. St., 338, and 4 McQuillin on Municipal Corporations, Section 1763.
Express authority for this conclusion is found in the case of The Logan Natural Gas & Fuel Co. v. City of Chillicothe, 65 Ohio St., 186, wherein the city, having granted in 1895 a franchise to the gas company fixing rates for the ensuing ten years, attempted in 1900 to impose by ordinance, and without the consent of the company, a “flat'charge” not provided for in the original ordinance. It was held that the ordinance of 1900 was invalid for want of consent of the other party to the franchise contract, but the gas company, which, without authority, had been exacting a “flat rate” charge of its own fixing, was expressly given the option of carrying out strictly the contract of 1895, or of accepting the provisions of the ordinance of 1900, which by such acceptance would be validated.
In other words, this court in that case, declared valid the precise course followed by the parties defendant in the present action.
No claim is made on other than technical grounds that the action of the Findlay council in the present instance constituted an abuse of power, or even that its passage of the ordinance of 1900 was in *150 judicious in the light of the public interest to be served.
Had it been so regarded by any appreciable number of citizens, it was open to them to have tested the issue by invoking a referendum, the remedy provided by the constitution and the legislature to meet just such situations. Nothing of the sort was attempted.
It is, however, claimed that the ordinance of October, 1918, is invalid because in conflict with the provisions of Sections 614-32 and 614-44, General Code.
The latter section authorizes a municipal corporation “within one year before the expiration of any contract” with certain public utilities to “proceed to fix the price, rate, charge, toll, or rental that such public utility may charge * * • * for an ensuing period.” It is pointed out that the city of Findlay assumed to act with respect to rates six years before the expiration of the rate contract of 1914.
However, the statute in question manifestly has reference solely to the exercise of the power of the municipality conferred by other statutory provisions (Section 3982, General Code) to regulate rates subject to an appeal by the utility or the electors to the Public Utilities Commission.
The section referred to does not assume, directly or by implication, to control or limit the power of a municipality to contract with such utility or to modify or abrogate existing contracts with the consent of the other contracting party. The power to *151 contract differs so essentially from the power to regulate, that no further comment is required.
Section 614-32, General Code, confers upon the Public Utilities Commission “power * * * in case of any emergency * * * to temporarily alter, amend, or with the consent of the public utility concerned suspend any existing rates.” This provision it is suggested was intended as an exclusive remedy for the condition which confronted the present parties defendant, and has the effect of prohibiting any action by the municipality or the utility, or both, with reference to existing rate contracts. Clearly, however, it is unnecessary to read into the act a prohibition of what neither the municipality nor the utility, acting independently, has power to do. (The Logan Natural Gas & Fuel Co. v. Chillicothe, supra.) On the other hand, the fixing of an emergency rate is simply a special form of regulation, and a statutory provision granting such power cannot be construed by implication, however strained, to affect the totally unrelated power to contract.
As Section 614-32, General Code, by its very terms is foreign to the controversy in the present case, it is unnecessary to consider whether by other provisions of the act of which it is a part (Section 614-47, General Code) it has any application to the rates for service agreed upon between the present defendants.
For the reasons assigned it must be concluded that the ordinance of the city of Findlay of October 1918, having been accepted by the gas company, was a valid exercise of municipal power. By the terms of that ordinance thus accepted, the *152 pre-existing- contract between the city and the gas company was abrogated, and ceased to be the subject of specific performance at the instance of any party or person whomsoever.

Judgment affirmed.

Nichols, C. J., Jones, Matthias, Johnson and Robinson, JJ., concur.