MORSE, Respondent, *vs.* MADDOX, Appellant.

1. A. leased to B. a farm, with "water privileges from the mill-pond for turning a wheel to drive a saddle-tree manufactory." *Held,* A. was not bound to keep the mill-dam in repair, nor to keep sufficient water in it to drive the saddle-tree factory. He was only liable for some *misfeasance* in respect to the matter, and not for any nonfeasance.

### *Appeal from Jefferson Circuit Court.*

This was an action brought by John H. Morse against Thomas H. Maddox, for an alleged violation of the following agreement :

"Article of agreement made and entered into between Thomas H. Maddox and John H. Morse, both of the county of Jefferson and state of Missouri, as follows : said Maddox grants, leases, and rents to said Morse, for and during the full term of five years from the tenth day of March, 1849, to the tenth day of March, 1854, the following described premises and privileges : First, said Morse is to have the use and occupation of the farm now under fence, and mansion house, including all the tenements and buildings, except such as hereinafter reserved ; all the buildings east of the branch, below the mansion house, are excluded ; also, water privilege by and through the saw-mill flume or fore-bay or out of the mill-pond

in some way, for driving or turning a wheel to drive a saddle-tree manufactory; also, all the buildings and improvements that said Morse may erect, or cause to be erected, to be the property of said Maddox at the end of the time specified above. Said Morse is to pay the said Maddox annually, the sum of eighty dollars, payable every six months from this date. Said Morse to keep the farm in good order and not to use any timber except for fire wood and said timber to keep up the fences. Said Morse, with his wheel or water privilege, not to interfere with or impede the grist-mill in any way. · Signed the within agreement the tenth day of March, 1849.

"THOMAS H. MADDOX,
"JOHN H. MORSE."

On the trial, the plaintiff offered evidence to prove that the dam did not furnish the same head of water subsequent to the date of the contract that it did at the time the contract was made; that it got out of repair from the high water in the spring of 1850; that, at the date of the contract, there was a head of water of four feet eight inches, and that the river was flush at the time; that, subsequently, the high water washed off some of the top of the dam; that in the summer of 1850, the height of the water was measured and it was no more than two feet four inches, but that it was generally from three to four feet; that, after the contract, the plaintiff proceeded to erect suitable buildings and machinery for his factory, at a cost of five or six hundred dollars.

The following instructions were given at the instance of the plaintiff:

" The jury are instructed that by the terms of the contract, Maddox was bound to furnish to Morse sufficient water power to drive a wheel to operate his saddle-tree factory, and the only condition was, that Morse was not to use that power so as to interfere with Maddox's grist-mill. If, then, Morse, upon the faith of this obligation of Maddox, proceeded to, and did put up buildings and machinery to carry on the saddle-tree business, and if Maddox did suffer his dam to get so low or leaky

Morse v. Maddox.

that it furnished insufficient power, so that Morse could not operate his wheel profitably, and in consequence had to abandon his business, then Maddox is liable in damages for the value of the buildings erected by Morse, and for losses sustained in selling out his machinery ; that Maddox was bound to keep his dam in the condition it was at the time of the contract, and if he failed to do so, he is liable to Morse for whatever damages he may have sustained."

The defendant asked the following instructions, the first of which was refused, and the others granted by the court .

1. That by the terms of the contract between Maddox and Morse, Maddox was under no obligation to keep his dam at any particular height, or to keep any particular head of water, and, unless the jury shall find that Maddox, by his own act, lowered his dam so as to prevent Morse from carrying on his business, they must find for the defendant.

2. Unless the jury shall find from the evidence, that there was insufficient water furnished from Maddox's dam to do the business required by Morse in his saddle-tree factory, they will not assess any damages against him on account of his dam being out of repair.

3. That Maddox cannot be held responsible for his dam being injured by high water, if he repaired it in a reasonable time after the injury.

4. If the jury should find that the dam was kept by Maddox, or his agent, in the same state of repair in which it was at the time of the contract, they will assess no damages against him for want of sufficient water to carry on the saddle-tree factory.

5. If the jury shall find from the evidence, that Morse abandoned his business of making saddle-trees for any other cause than the want of water, they will find for the defendant.

6. That if the jury should find from the evidence, that the head gate was shut down after Morse had abandoned his busidess, they will assess no damages against Maddox on that, nor will they assess any damages unless they also find that it was

shut by Maddox or his order, and so as to obstruct the business of Morse and for the purpose of obstructing his business.

There was a verdict and judgment for the plaintiff, from which the defendant appealed.

*M. Frissell,* for appellant. The court below put an erroneous construction upon the contract, in reference to the water privilege. There is no stipulation on the part of Maddox that there should be any particular head of water. It was a simple permission to use the water from the dam, so as not to injure the grist-mill of Maddox.

*Johnson* and *Jones,* for respondent. The true construction of the contract is, that Maddox was bound to furnish sufficient water to operate Morse's saddle-tree factory. Maddox was bound to keep the dam in such repair that it would furnish the requisite supply of water.

RYLAND, Judge, delivered the opinion of the court.

This case depends upon the construction of the article of agreement between the parties. The court below construed this agreement as one binding on Maddox to furnish sufficient water power for the driving of the plaintiff's wheel, in order to operate his machinery in making saddle-trees. The instructions given to the jury tell them that " Maddox was bound to furnish to Morse sufficient water power to drive a wheel to operate his saddle-tree factory ; and the only condition was, that Morse was not to use that power so as to interfere with Maddox's grist-mill. If, then, Morse, upon the faith of this obligation of Maddox, proceeded to and did erect buildings and machinery to carry on the saddle-tree business, and if Maddox did suffer his dam to get so low and leaky that it furnished insufficient power, so that Morse could not operate his wheel profitably, and, in consequence, had to abandon his business, then Maddox is liable in damages for the value of the buildings erected by Morse, and for losses sustained in selling his machinery ; that Maddox was bound to keep his dam in the con-

dition it was at the time of the contract, and if he failed to do so, he is liable to Morse for whatever damages he may have sustained.    The defendant asked the court to instruct the jury that, by the terms of the contract, Maddox was under no obligation to keep his dam at any particular height or to keep any particular head of water; and, unless the jury shall find that Maddox, by his own act, lowered the dam so as to prevent Morse from carrying on his business, they must find for the defendant.    This the court refused to give.

1. In the opinion of this court, the court below erred in its construction of the agreement between these parties.    Maddox grants, leases and rents his farm for five years to Morse; also, " water privilege by and through the saw-mill flume or forebay, out of the mill-pond in some way, for driving or turning a wheel to drive a saddle-tree manufactory."    " Said Morse, with his wheel or water privilege, not to interfere with or injure the grist-mill in any way."    There can be no doubt as to this agreement.    It was a lease of the farm with the privilege of using the water from the pond.    There is no undertaking what the supply of water shall be; no undertaking to keep the mill-dam in repair; no undertaking to furnish a sufficiency of water.    The privilege barely of using the water from the mill-pond through the flume, or in some other way, was granted.    There was no undertaking on the part of Maddox to keep the water at a certain height in the dam.

In *Pomfret* v. *Ricroft*, 1 Saund. 321, it was held, that " if lease be made of a house and piece of land, except the land on which a pump stands, with the use of the pump, the lessee may repair the pump, but no action of covenant lies against the lessor for not repairing it."    In this case, Twysden, justice, differed from the other judges, Kelynge, Rainsford and Morton, and the plaintiff had judgment; but this was afterwards reversed in the exchequer chamber, by the whole court, and reversed for the reasons given by Twysden, who said that, where a man grants a water course and afterwards stops it, or demises a house and estovers and afterwards destroys the wood, in such cases

the party grieved shall have his remedy by action of covenant; for these are *wilful* acts of the lessor or grantor, and it is a *misfeasance* in him to annul or avoid his own grant. But in this case there is no misfeasance, but only a nonfeasance, for which no action lies. As, in the case where I grant a way over my land, I shall not be bound to repair it; but if I voluntarily stop it, an action lies against me for the misfeasance; but, for the bare nonfeasance, viz., not repairing it when it was out of repair, no action at all lies. In this case, Twysden further held, that the plaintiff, being the lessee, might, himself, have repaired the pump, for, although neither the soil itself, nor the pump be granted to him, yet, by the grant of the use of the pump, the law has given to him this liberty; for, *when the use of a thing is granted, every thing is granted by which the grantee may have and enjoy such use.* See, also, the case of *Rhodes* v. *Bullard,* 7 East. 116.

" In the absence of agreement, the landlord, for his own sake, will generally prevent the premises from running to decay; but he cannot be compelled to repair, even though the premises be destroyed by fire. So, where a house was demised, with use of pump, it was held, that an action of covenant could not be supported against the lessor for not repairing the pump, though the lessee, himself, might do what was necessary to secure his enjoyment of it." 2 Platte on Leases, 183.

" The landlord sometimes covenants that he will repair the premises, but, unless he bind himself by such express covenant, the tenant cannot compel him to repair. Therefore, if a lease be made of a house with the use of a pump standing on the lessor's premises, the lessee has no remedy against the lessor for suffering the pump to be out of repair." Coote on Landlord and Tenant, 227.

Thus we find the general doctrine on this subject. Now, under this lease, the landlord was not bound to repair the mill-dam—not bound to keep a certain height of water in the dam. He grants the use of the water, or, rather, grants the privilege of using the water in the pond, through the flume or

forebay, to the plaintiff, together with his farm; but the plaintiff, in using this privilege, is not to interfere with the defendant's grist-mill. Applying the principles, long settled in similar cases, to this, and it is plain that the court below erred.

Before the defendant can be made liable to the plaintiff on this agreement, he must do some act by which the use of the water from the mill-pond is destroyed. It will not be enough that he fails barely to repair the dam; his nonfeasance will not render him liable; he must, by his actions, destroy or injure the plaintiff's privilege to the use of the water.

The court below committed error in giving the instructions for plaintiff as above quoted; also, in refusing to give the instruction prayed for by the defendant.

The other judges concurring, the judgment below is reversed and the cause remanded.