[No. 2439]

ALMEDA E. MATT and A. J. MATT, Respondents,
    *v.* A. H. BARLOW and C. A. NORCROSS, Appel-
    LANTS.

[195 Pac. 1036]

1. Landlord and Tenant — Landlord Not Required to Repair·
    Premises in Absence of Provision of Contract or Statute.
        Generally, where no .statute requires the landlord to repair
    leased premises, no such burden will be read into the lease
    or imposed upon the lessor.

2. Landlord and Tenant—Lessor Held Not Required to Provide
    Tenant of Irrigated Land with Horses for Rebuilding Dam.
        Lessor's agreement to furnish horses to break the land and
    to cultivate and harvest crops on irrigated lands did not require
    him to furnish horses to rebuild washed-out dam, though the
    water from dam was necessary for cultivation of crops.

Ducker, J., dissenting.

APPEAL from Eighth Judicial District Court, Lyon
County; *James A. Callahan,* Judge.

Action by Almeda E. Matt and husband against A. H.
Barlow and C. A. Norcross. Judgment for plaintiffs, and
defendants appeal. **Reversed.**

*Norcross, Thatcher & Woodburn* and *M. A. Diskin,* for
Appellants:

The evidence is insufficient to warrant the judgment,
which should be reversed.

No valid or any contract was entered into, the breach
of which would make appellants liable for damages for
the failure to furnish horses, because the minds of the
parties did not meet as to the number of horses, or when
or for what purpose they were to be furnished; and
neither the complaint nor the evidence shows any con-
tract as to any designated number of horses, or that they
were to be furnished to repair the dam, or for any other
purpose. "It is essential to a contract that the nature
and extent of its obligations be certain." 13 C. J. 266;
Jones v. Vance Shoe Co., 115 Fed. 707; Prior v. H. & D.
L. Co., 80 S. E. 559.

It was not contemplated by the parties that the horses

to be furnished were to be used in repairing the dam, or that a dam would break. "The essence of the rule seems to be that the defendant must, in some measure, have contemplated the injury for which damages are claimed." Cohn v. Norton, 5 L. R. A. 572; Hunt Bros. v. San Lorenzo W. Co., 87 Pac. 1093; Jones v. George, 48 Am. Rep. 280; Squire v. W. U. T. Co., 93 Am. Dec. 157; Eschback v. Hughes, 27 N. Y. S. 320; Selig v. Botts, 193 S. W. 534; Winslow E. Co. v. Hoffman, 17 L. R. A. 1130; Carnegie v. Holt, 58 N. W. 623.

When the dam broke, sufficient horses were on hand to make repairs. The party claiming damages must use reasonable diligence to minimize the loss; he cannot recover for loss which might have been averted by reasonable effort. Warren v. Stoddard, 26 L. Ed. 117; Humphrey v. S. P. Co., 31 Nev. 120.

If appellants are liable for damages, the correct amount should be the cost of the hire of horses to repair the dam. Warren v. Stoddard, supra. The proximate cause of the damage was the breaking of the dam, not any failure to furnish horses. 1 Sutherland, Damages, 4th ed., sec. 34, p. 129.

*Mack & Green,* for Respondents:

Where a party to a contract has actual notice or knowledge of special circumstances that a remote or consequential injury will result from the breach of his contract, he will not be relieved from liability for such injury. 3 Sutherland, Damages, 4th ed., sec. 702; Burrus v. N. C. O. R. Co., 38 Nev. 156.

"Where special circumstances have been communicated to a party at the time of the making of a contract which go to show that its breach will involve special damage, such damage may be recovered, although not the natural result of an ordinary breach." 13 Cyc. 34; 8 R. C. L. 459, 461–462; 8 Ency. Law, 2d ed., p. 596; 1 Sedgwick, Damages, 8th ed., secs. 122, 157; Bradbury M. Co. v. Laclede G. Co., 125 Mo. App. 96; 4 Sutherland, Damages, 4th ed., p. 3903.

By the Court, COLEMAN, J.:

A suit was brought in the district court of Lyon County to recover damages alleged to have been sustained by Almeda E. Matt for breach of contract of lease. The complaint alleged that on or about March 1, 1918, the defendants verbally leased to Almeda E. Matt 80 acres of land in Lyon County, Nevada, together with wagon, harness, team, horses, farming implements, tackling and rigging; that it was further agreed that the defendants were to furnish help to clean the ditches on the land leased, to build fences, harvest hay and grain, break 40 acres of land for wheat and barley, and furnish seed for the seeding of the ground and feed for the team so to be furnished. It is further alleged that the defendants agreed to pay $35 per month to apply toward feeding the help; also that in consideration of the services agreed to be performed by A. J. Matt in repairing the fences upon the ranch, cultivating and irrigating the 80 acres, harvesting the crops, and feeding the help to be furnished by the defendants, the said Almeda Matt should have, free of charge, a 7-acre tract, to be planted as she might desire, and one-half of the crops grown upon the 80-acre tract.

It is averred that plaintiffs performed the obligations resting upon them in pursuance of said agreement of lease, but that the "defendants refused and neglected to perform their items of contract beyond furnishing the land, and plaintiffs were damaged thereby in the sum of $800."

A second cause of action was alleged, on account of which the court allowed judgment for $36. An answer was filed denying the material allegations of the complaint.

Because of the relationship of husband and wife, A. J. Matt was joined as plaintiff.

The case was tried to the court, and judgment rendered in favor of the plaintiffs in the sum of $394.60, as damages sustained for failure to furnish horses to rebuild the dam, and $36 on account of the second cause

of .action. It is conceded that plaintiffs are entitled to recover the sum of $36 upon the second cause of action, but contended that there should be no recovery on the first cause of action.

The undisputed evidence shows that the defendants kept one team of work horses and a driving horse upon the ranch all of the time. It also appears that the plaintiff seeded only 12 acres in all—5 in wheat, 5 in barley, and 2 in potatoes. It is not claimed that the wheat and barley needed cultivation.

Plaintiffs contend that since it was necessary to irrigate the crops in order to mature them, and the water being appurtenant to the land, it follows as a matter of course that it was the duty of the defendants to furnish horses to rebuild the dam. If plaintiffs are in error in this contention, the judgment must be modified as indicated.

Nowhere in the evidence does it appear that anything was said about furnishing horses to rebuild the dam in case it was washed out, or that defendants agreed to rebuild it. In fact, so far as it appears, either from the complaint or the evidence, no allusion was made by the parties, in entering into the contract, to the dam. Appellants contend that the evidence is insufficient to sustain the judgment.

1. It is a well-established rule that where premises are leased, and there is no stipulation in the law or statute to the effect that the landlord shall repair the leased premises, no such burden will be read into the contract of lease or imposed upon the lessor by the courts. 24 Cyc. 1081; 18 Am. & Eng. Ency. Law (2d ed.) 215; 16 R. C. L. 1031. What, if anything, is there in this case to take it out of the general rule which we have stated?

We are unable to distinguish the instant case from those in which it is held that the general rule to which we have called attention applies. A case similar to the one at bar is that of Sheets v. Selden, 7 Wall. 416, 19

L. Ed. 166, the facts of which are these: The State of Indiana, owning a certain canal, made two leases of its surplus water, one to Yanders & Sheets, for a term of thirty years, in consideration of certain rents reserved. The lease contained a provision that the lessee should not be deprived of the use of water by any act of the state, or its agents, or by the inadequacy of the supply, for more than one month in the aggregate in one year; and that if, for the purposes of repairing the canal, preventing breaches, or making improvements to the canal, or the water connected with it, or the inadequacy of the supply of water, the lessees should be deprived of the use of any portion of the water power used, deduction should be made from the rent accruing. After the execution of the lease Sheets acquired Yanders's interest therein, and Selden that of the State of Indiana in the canal. Sheets having failed to pay the stipulated rental, Selden brought suit against him, in ejectment, resulting in a verdict in favor of the plaintiff. Thereafter Sheets filed a bill in equity to enjoin the enforcement of the judgment in ejectment. One of the facts relied upon in the last-mentioned action was the inadequacy of the supply of water furnished by the canal, owing to the culpable negligence and gross carelessness of Selden in failing to repair breaches in the canal locks and removing obstructions created by the growth of grass in the bottom and on the sides of the canal. The court, in holding that Sheets could not prevail in his action, said:

"The tendency of modern decisions is not to imply covenants which might and ought to have been expressed, if intended. A covenant is never implied that the lessor will make any repairs."

In reaching its conclusion, the court reviews several decisions, and in commenting upon one of them says:

"In the case of Trustees of the Wabash and Erie Canal v. Brett, the trustees had leased so much of the surplus water of the canal as might be necessary for the purposes specified. The right was reserved, upon

payment for the mill to be built by the lessee, to resume the use of the water leased whenever it might be neces- ·sary for navigation, or whenever its use for hydraulic purposes should be found to interfere with the naviga- tion of the canal. It was averred that the trustees had abandoned that part of the canal, and suffered it to go to decay, so that the water power was destroyed and the plaintiff's mill rendered valueless. The court held that there was no implied covenant to keep the canal in repair, that the express provision for compensation in one case excluded the implication of such rights in all others, and that the plaintiff was without remedy."

The case of Morse v. Maddox, 17 Mo. 569, grew out of a lease between the parties to the action, wherein Mad- dox leased to Morse a certain portion of a farm and a water privilege through a certain flume from a mill-pond for driving a water-wheel in a factory. On the trial it was proven that, after the lease had been entered into, the dam to the pond got out of repair, and did not furnish the same head of water as before the execution of the lease by one-half. The action was for damages sustained because of the failure of Maddox to keep the dam in repair. There was in the lease no covenant to repair. The case was tried to a jury, and the court, in substance, instructed the jury that it was the duty of Maddox to keep the dam in repair. There was a judg- ment for the plaintiff, from which defendant appealed. The court refers to several authorities, and quotes from some to the effect that the landlord does not have to repair where there is no covenant to do so, and proceeds:

"Now, under this lease, the landlord was not bound to repair the mill-dam—not bound to keep a certain height of water in the dam. He grants the use of the water, or, rather, grants the privilege of using the water in the pond, through the flume or forebay, to the plaintiff, together with his farm."

The judgment was reversed.

The case of Bradbury v. Higginson, 162 Cal. 602, 123 Pac. 797, is in line with the cases we have mentioned.

The plaintiff leased to the defendant certain premises to which was appurtenant a water system. The action was to recover a balance alleged to be due as rentals for the premises leased. The defense was that the water system became out of repair, and that it was the duty of the plaintiff to repair the same. The court said:

"If water was being supplied to the premises from a water system owned or maintained by the plaintiff, the right to the use of the water so supplied would be one which would naturally, and perhaps necessarily, appertain to the leasehold estate. This right, however, in the absence of an express term of the written contract further defining it, would be only to have the water drawn from the supply controlled by the plaintiff, and to have it pass through the pipes in which it was customarily conducted to the premises. Under the term 'appurtenances' there could not be implied an agreement on the part of the plaintiff to keep in repair the water system or the pipes leading to the leased premises."

The Supreme Court of Indiana, in Skillen v. Waterworks Co., 49 Ind. 193, in an action for damages growing out of the failure of the defendant to repair a canal which furnished the water which the defendant leased to the plaintiff for motive power for a certain mill, held that the defendant was under no obligation to repair the dam, and hence was not liable in damages.

2. We have not found a case of a similar character in which a different result has been reached. Why should not such be the rule in the instant case? What fact is there in this case to take it out of the rule mentioned? We take it that if there had been no agreement to furnish horses to break the land and to cultivate and harvest the crops, there would be no contention that the defendants should have furnished horses to rebuild the dam. It is said that the replacing of the dam was a necessary act in the cultivation of the crops, for which the defendants obligated themselves to furnish the necessary horses. This statement seems to embody the theory of the plaintiff as to why the duty is imposed

upon defendants to furnish horses to rebuild the dam. The defendants agreed to furnish horses for certain purposes only, viz, to break the ground and cultivate and harvest the crops. The wheat and barley did not need cultivation about July 1, when the dam broke, and surely one team of horses was sufficient to cultivate two acres of potatoes. Was it incumbent upon the defendants to keep several teams of horses in waiting to repair a dam that might or might not break? Or was it incumbent upon them to hire horses to do so, or divert horses from other work for the purpose? It is true that the court found that the defendants agreed to furnish horses to repair the dam, but the complaint does not so allege, and the only evidence on the point is to the effect that nothing was said about the dam. The finding mentioned is a mere legal conclusion, and not one based upon positive evidence. Has the court the right to read into a contract such a term? Can the court impose upon the defendants a condition never discussed, much less not agreed upon? Can the court make a contract for the parties? A landlord cannot be compelled to repair; then how can he be held liable for not furnishing the instrumentalities wherewith to make repairs, unless he agrees to do so? There is no difference in the rules governing the two situations.

Judgment is reversed.