In the Matter of the Application of THE SCHENECTADY RAILWAY COMPANY for a Peremptory Order of Mandamus, Respondent, against FREDERICK STUART GREENE, as Superintendent of the Department of Public Works of the State of New York, Appellant.

Third Department, September 19, 1929.

12

*Hamilton Ward, Attorney-General [Albert J. Danaher, Assistant Attorney-General, of counsel], for the appellant.*

*Naylon, Maynard, Bates & Smith, for the respondent.*

VAN KIRK, P. J. This is a proceeding, not against the State, but against an officer thereof, to constrain him to perform an alleged duty imposed upon him by statute. (*Town of Easton* v. *Canal Board,* 216 N. Y. 486, 489.) The proceeding may not be maintained unless a duty rests upon the Superintendent of Public Works to maintain and keep in repair the piers of the Scotia bridge.

The petitioner's main propositions are, that it has a franchise right to the use of these piers; that such right is perpetual; that it is the duty of the State and of the Superintendent of Public

Works to maintain and keep in repair these piers for its use. We think these propositions are not sustained.

The State granted to the Mohawk Bridge Company a franchise to act as a corporation for the purposes declared. (Laws of 1800, chap. 105, and Laws of 1805, chap. 127.) The bridge company thus was granted the right to occupy the bed of the Mohawk river, a public stream, to the extent necessary for the construction of its toll bridge. This was an exclusive franchise granted by the sovereign State for a public use. Such grants are to be construed strictly against the grantee (*Langdon* v. *Mayor, etc., of N. Y.*, 93 N. Y. 129; *People ex rel. Third Ave. R. R. Co.* v. *Newton*, 112 id. 396, 399; *Brooklyn Heights R. R. Co.* v. *Steers*, 213 id. 76, 80), and " nothing should be taken by inference or presumption to enlarge their import." (*Syracuse Water Co.* v. *City of Syracuse*, 116 N. Y. 167, 178; *Charles River Bridge* v. *Warren Bridge*, 36 U. S. [11 Pet.] 540.) This franchise is subject to the stipulation in the act of 1800 that the Legislature may dissolve the corporation when its income has recompensed it for its investment together with interest thereon at fourteen per cent and thereupon the " bridge shall be vested in the People of this State, and be and remain at their disposal." Thus the franchise to the bridge company was not perpetual, but was limited, not by a period of time, but by a condition. When, under chapter 659 of the Laws of 1873, the town of Glenville acquired the property and rights of the bridge company, it took title to that only which the bridge company owned. This legislative act in no wise modified the original franchise. The town so held title to the bridge and the limited franchise when in 1901 it gave consent that this petitioner construct and " operate a single or double track extension or branch across a bridge to be erected [by it] on the westerly end of the piers of present bridge but outside of the present driveway." This consent was given at the solicitation of the railway company and for a nominal consideration, under section 96 of the former Railroad Law, which has been continued by section 176 of the present Railroad Law. This section was a general provision; it granted no special rights to this railway company in this bridge or its piers. (*New York, M. & N. T. Co.* v. *Shea*, 30 App. Div. 266, 267.) The most that could be claimed is that it extended the area within which the railway company could construct its lines when it had acquired its roadbed or right of way. The section simply conferred a privilege to " any street railroad in operation in this State " to cross a highway bridge when it had the consent of the owner and upon the terms and conditions agreed upon between it and the owner. The giving of the consent by the town in no wise imposed an obligation on the State in respect to the Scotia bridge. The

right which petitioner has in the bridge was acquired solely from the town through its consent.

The consent which the town of Glenville gave to the railroad company is uniformly spoken of in the respondents' brief as a franchise; it is, however, no franchise in the ordinary sense. " The right to construct and operate a street railway is a franchise which must have its source in the sovereign power." (*Hatfield* v. *Straus*, 189 N. Y. 208, 224.) The franchise of the railway company was that granted by its charter. Such a franchise puts no obligation on the State to furnish a right of way or a roadbed, nor does a consent by a municipality that a railway company may use streets or highways obligate it or the State to maintain such street or highway for railway purposes. The town of Glenville had no authority to grant any franchise; it simply owned the bridge, the bed of the highway, and the railway company could not cross the bridge till it acquired the right. (*Peck* v. *Schenectady R. Co.*, 170 N. Y. 298.) Its right was simply to use the property which the town had acquired from the bridge company and which it owned subject to the limited franchise above described. The consent was a contract; it was not a conveyance of a freehold interest in any property; the town board had no authority to convey such an interest. It was a permission to use some of the town property. It was a binding obligation between the parties; it defined and regulated their relations, but it did not impose any obligation upon the town to repair the piers. The contract did not purport to make the permission to use perpetual, nor did it affect the rights and powers of the State over highway bridges. It was a contract as proprietor and in no sense like a grant by a municipal corporation to construct a railroad in its streets, as in *People* v. v. *O'Brien* (111 N. Y. 1).

If the permission amounted to an easement the duty to repair rested by law upon the dominant estate. (19 C. J. 980.) The general rule as to servitude is that there is no obligation on the owner of the servient property to do any act, but only to allow another to do some act, or to refrain from doing some act himself. (*Fritcher* v. *Anthony*, 20 Hun, 495, 499.) The grantee of an easement to use a bridge is bound to keep it in repair. (*Streuber* v. *Meacham & Son*, 163 App. Div. 574; *Oney* v. *West Buena Vista Land Co.*, 104 Va. 580; 2 L. R. A. [N. S.] 832.) The grantee of any easement is required to make such repairs as are necessary in connection with his use. (*Herman* v. *Roberts*, 119 N. Y. 37.)

Such was the status of the petitioner when in 1917 the Western Gateway Act (Laws of 1917, chap. 735) was passed, which provided for a new bridge across the Mohawk river in place of

the existing Scotia toll bridge. The terms of that act were complied with and thereupon title to the bridge and all right therein vested in the People of the State to " be and remain at their disposal." (Laws of 1800, chap. 105.) The purpose of this latter act had been fulfilled; with the enactment of the Western Gateway Act the People disposed of all rights acquired under the original act. So far as the stipulation that the People of the State might dispose of the bridge when the bridge company had been reimbursed was for the benefit of the bridge company and its stockholders, it had been fully satisfied. When the bridge company at an agreed price conveyed its property to the town of Glenville the company and its stockholders were satisfied; and, when the town of Glenville conveyed the bridge property to the State at an agreed price, it was satisfied; the terms of the stipulation, according to its intent and meaning, were fully complied with and the People of the State became the owners of the bridge.

The Western Gateway Act was a valid exercise of the legislative power, not only under the powers reserved in the original act of 1800, but under the sovereign power. Control of highways is in the sovereign; it acts through the Legislature. The Legislature may act directly. In the absence of constitutional restriction it has full control of highways and may discontinue or alter them in such manner as it determines to be in the interests of the public and its convenience. (29 C. J. 504, § 199; Id. 517, § 226.) A retrospective law may divest " ' antecedent vested rights,' " and not thereby violate the Federal Constitution, " ' provided its effect be not to impair the obligation of a contract.' " (*Charles River Bridge* v. *Warren Bridge,* 36 U. S. [11 Pet.] 540.) There is no constitutional restriction in conflict with this act. It does not violate any obligation of a contract. As above shown, no contract with the State or the town existed, any provision of which has been disregarded. Apart from the stipulation in the act of 1800 above discussed, the contracts between the bridge company and the town and between the town and the railway company must be held to have been made subject to the power of the Legislature to discontinue this bridge or change its location at some future time when the public interests might demand it. " ' No obligation of a contract can extend to the defeat of legitimate government authority.' " (*Louisville & Nashville R. R.* v. *Mottley,* 219 U. S. 467, 482; *Union Bridge Co.* v. *United States,* 204 id. 364; *Charles River Bridge* v. *Warren Bridge, supra; Kirk* v. *Maumee Valley Electric Co.,* 279 U. S. 797.) " One whose rights, such as they are, are subject to State restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry

with it the infirmity of the subject matter." (*Hudson Water Co.* v. *McCarter*, 209 U. S. 349, 357.) There is nothing in the deed from the town to the State, or in the acts of officers or agents of the State, or in any statute, which puts any contract liability on the State, or by which it is estopped from exercising its rights as against the petitioner.

It is not necessary to determine whether, should the State remove the piers, the petitioner should in law or as an act of justice have compensation; that question is not presented.

We find no duty or obligation resting upon the State, or the Superintendent of Public Works, to maintain and repair these piers. The remedy sought is futile. The mandamus order should be reversed and the petition dismissed, with costs.

DAVIS, J., concurs; HILL, J., concurs solely on the ground that the grantor of an easement is not required to make repairs; WHITMYER, J., dissents, with a memorandum in which HINMAN, J., concurs.

WHITMYER, J. (dissenting). The real question relates to the obligation to maintain and repair the piers. That obligation was originally on the bridge company and was assumed by the town when it acquired the bridge. At the time of the consent to the railway company, the Railroad Law, section 96 (now section 176), provided that a street railroad in operation, which should by a two-thirds vote of the directors, decide to extend its route so as to cross a river over and by any bridge then or thereafter constructed, might so extend it upon such terms as might be mutually agreed upon by it and the bridge company. The town was operating the bridge in its proprietary capacity and had taken the place of the former bridge company. At that time the obligation to repair was on the town. The right given was to construct and maintain a superstructure upon the westerly side of the piers. Nothing was said about repairs, except as may be implied from the obligation to maintain the superstructure. The obligation to repair the piers was still on the town and the railroad company did not assume it. That was the agreement and there were considerations for it. After the agreement, the railway company performed its part. And, when the bridge was conveyed to and taken over by the State, subject to existing rights or franchises, the obligation to maintain and repair went with it. In the strict sense, it was not a franchise which the railway acquired, but, at any rate, it was a right. The State took the deed subject

to existing franchises or rights. Prior to that the State had recognized the rights of the railway company by paying the cost of raising the superstructure. It knew about the rights and the uses to which the bridge was being put under them. And, until the rights of the railway company are ended, it will be the duty of the State to maintain and repair the bridge to the end that the rights may be effectual. (*People* v. *Syracuse Rapid Transit R. Co.*, 129 App. Div. 800.) It is not like the case of the ordinary abandonment of a highway. This highway was authorized by statute, was built by a company, was taken over by the State after certain rights had accrued to the knowledge of the State, and it is to be abandoned, if possible, without any provision as to those rights.

It seems to me that it is a matter of contract; that the railway company has a right for which it is entitled to compensation and that the obligation to repair is upon the State. I dissent and vote for an affirmance.

HINMAN, J., concurs.

Orders reversed on the law, and petition dismissed, with costs.