**DAYTON (city) v RAPPAPORT et**

Ohio Appeals, 2nd Dist, Montgomery Co

No 1108. Decided Jan 21, 1932

Gilbert Bettman, Attorney General, Columbus, J. A. Harshman, Dayton, and W. V. Snyder, Dayton, for plaintiff in error.

Albert J. Dwyer, Dayton, for the Wise-Sheible Company.

McConnaughey, Shay, DeMann & McConnaughey, Dayton, Matthews & Matthews, Dayton, and M. S. Kuhns, Dayton, for other parties.

ALLREAD, PJ.

The plaintiffs rely upon the cases decided

by the Ohio Supreme Court and by the Supreme Court of the United States in reference to land used for canal purposes. We are of opinion that these cases do not apply to the question here. The land was not used directly for canal purposes, but incidentally for hydraulic purposes. It appears that D. Z. Cooper, and his successors in title, have sublet portions of the land upon which buildings of great value, worth approximately $50,000 have been built. If this decree is entered in favor of the city the land would not only be forfeited to the State and its grantee, the city, but also the improvements made thereon.

We think the case that directly applies is that of **Railroad Company v The State, 85 Oh St, 251.** The first and second propositions of the syllabus are:

"In conducting transactions with respect to its lands the state acts in a proprietary, and not in a sovereign capacity, and being amenable to all the rules of justice which it prescribes for the conduct of its citizens, it will not be permitted to revoke a grant of lands made upon a valuable consideration which it retains."

"When land is granted to a city upon a valuable consideration to be used for streets and other purposes, the title will not, in the absence of an express stipulation to that end, revest in the grantor because the land is subsequently used for street and railroad purposes."

The land involved in the present case was not used directly for the principal purpose of the canals, but was used for hydraulic purposes. The land was capable of independent uses and was suitable for the construction of buildings thereon, for which the water power was an incident. The State in its proprietary capacity was therefore bound as an ordinary citizen, and was bound by notice of the uses to which Cooper applied it.

The State had absolute power over the principal uses of the canal; had the right to prescribe and to regulate the surplus water. This surplus water was used by D. Z. Cooper and his successors in title for hydraulic purposes until the year 1926, when the Legislature abandoned the canals.

We think under the rule established by our Supreme Court in the **85 Oh St, 251,** the State had no right in its proprietary capacity to terminate the lease to lands obtained for hydraulic purposes. The State leased the tract of land to Cooper for a valuable consideration and allowed Cooper and his successors to build valuable buildings thereon. The transaction must therefore be held to be one based on a valuable consideration.

The above authority has been followed in the case of **State ex Crabbe, Attorney General v The Middletown Hydraulic Company, 114 Oh St, 437.** This was a case where in the original location of the canals they found it necessary to appropriate possession of a dam and millrace site. This use by the state was continued for sixty-eight years. It was held in that case that the owner upon the abandonment of the canal was entitled to the millrace and dam as it was originally conducted before being appropriated for canal purposes. The third syllabus is as follows:

"Where water rights are granted for a specified use, or are excepted from a grant for a specified use, in the absence of an expressed intention that the grant or the limitation are for no other use, the specification of the use will not be regarded as a limitation of the character of the use, but only as a limitation of the quantity of the use."

This decision holds that although the owner of the millrace and dam submitted to the State's use of the same for sixty-eight years, he was not bound upon its abandonment to give up the original use. There was therefore an implication in the original grant for canal purposes that the use could be re-asserted after abandonment of the canals. This case is in harmony with the original decision by the Supreme Court in the case of **Railroad Company v State ex, 85 Oh St, 251.**

In the Hydraulic Company case the following quotation is made from the case of Railroad Co. v The State ex, to-wit:

"In conducting transactions with respect to its lands, the state acts in a proprietary, and not in a sovereign capacity, and, being amenable to all the rules of justice which it prescribes for the conduct of its citizens, it will not be permitted to revoke a grant of lands made upon a valuable consideration which it retains."

In this case there is also a quotation from the decision of **State v Executor of Buttles, 3 Oh St, 309,** as follows:

"When the state appears in her courts as a suitor, to enforce her rights of property, she comes shorn of her attributes of sov-

ereignty, as a body politic, capable of contracting, suing, and holding property, subject to those rules of justice and right, which in her sovereign character she has prescribed for the government of her people."

In this case the following cases may be cited:

Fox v Cincinnati, 104 U. S., 783

Kirk, Superintendent, etc. v The Maumee Valley Electric Company, 279 U. S., 797.

The lease of D. Z. Cooper, while it does not provide expressly for this particular case or as to the title in case of the abandonment of the canal, yet the State of Ohio coming into court as a suitor is bound as any other suitor, to the situation as it occurred to the parties to the Cooper lease at the time of its execution at the time of the abandonment of the canal. The original lease to D. Z. Cooper binds Cooper and his lessees not only for the express terms of the lease, but for the implications arising therefrom at the time of the abandonment of the canal. Cooper's lessees were in possession of the leased property, paid the amount of rentals to the State, had given permission to his sub-lessees to construct valuable buildings thereof, and was operating the same, having substituted electricity and other power for the original water power.

We are clear that the rights of the lessee and sub-lessee are not forfeited to the State; that the declaration of forfeiture and the conveyance to the city must be taken subject to the rights of the defendants.

We therefore hold that the judgment of the Court of Common Pleas was correct and must be affirmed.

HORNBECK and KUNKLE, JJ, concur.

## ON REHEARING

Decided April 11, 1932

### BY THE COURT

We have considered the question of rents. We have reached the conclusion that payment of the rent as tendered up to the time of the commencement of the action should be provided for in the journal entry. The balance of the rent should be left for determination by the Court of Common Pleas in the case wherein an issue is tendered as to such rental. The judgment entry as presented should be so modified as to include a disposition of the rentals up to the time of the commencement of the action.

Judgment accordingly.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.