■ HAMILTON ARMSTRONG et al., Appellants, v COUNTY OF ONONDAGA, Acting for and on Behalf of ONONDAGA COUNTY WATER DISTRICT, Respondent. — Judgment reversed, without costs, and matter remitted to Supreme Court, Onondaga County, for further proceedings in accordance with the following memorandum: The principal issue on this appeal is whether the parties to a 1964 deed, a 1965 agreement and a 1971 deed, all relating to the grant of an easement to the county over a private road, intended that the county was to maintain the road in the event it abandons the easement. A county has broad power to acquire real property or any interest therein for its lawful purposes (Statute of Local Governments, § 10, subd 2). More specifically, a county district may acquire real estate and easements by gift, lease, purchase or condemnation (County Law, § 263). In this purchase, the obligation of the county to maintain the easement at its sole expense was a benefit to the lands burdened by the easement and was, of course, a burden to the county. Since the purpose of the easement was to provide access from the public highway to county land, the easement was a burden upon the lands it traversed and was a benefit to the county land. Thus established was the measure of consideration given by the county for the easement. Significantly, neither the deeds nor the agreement proscribe the county from abandoning the easement. It was foreseeable here, as ordinarily it is in every case of an easement for access, that at some future date the easement would be of no value to the dominant tenement, which in this case is the county land. In such event, it is well settled that the owner of the dominant tenement may abandon the easement (*Gerbig v Zum-*

*pano,* 7 NY2d 327, 330-331). We conclude, therefore, that the parties intended that the consideration for the easement was the county's obligation to maintain the access road only for such time as the county retained the easement. Having thus assessed the intent of the parties to these three instruments, it is of no consequence that plaintiffs may have been third-party beneficiaries of the 1964 deed or the 1965 agreement. Moreover, the 1971 indenture between plaintiffs and the county reaffirmed, but did not expand, the county's existing obligation. There is another reason for declining to construe the deeds and the agreement as creating an obligation to maintain the access road beyond the abandonment of the easement by the county. To do so would have the effect of creating an affirmative covenant running with the land, with no temporal limitation upon its duration. The successor in interest to the county's land would be burdened with the obligation to maintain the private road. The alienability of the county's land should not be so restricted (see *Eagle Enterprises v Gross,* 39 NY2d 505, 510). On this point, the charge of the dissenter that we "have interjected an issue not raised, briefed or argued" deserves but brief comment. The issue of perpetuity has been in the case from the beginning. The documents under review purport to bind the county's successors and assigns. The trial court's dismissal of the complaint was premised upon a holding that the burden of maintenance should not be allowed unfairly to outlive the benefit of the use and the subject matter of the case relied upon by the trial court (see *Levy v Schnurmacher Constr. Corp.,* 255 NY 83) was an affirmative covenant running with the land. Despite ample opportunity to have done so, the county has never abandoned its easement. Although the county argues that the abandonment issue in its brief on appeal, it is neither alleged in the pleadings nor was it demonstrated at trial that the county has abandoned. The evidence bearing on abandonment shows only that the county has not used the easement since December, 1971 and that it has failed to maintain the private road since 1972. Little or no weight can be given to the county's construction of an alternate access road, since that construction was in progress when the county reaffirmed the easement in the November, 1971 deed. The proof, therefore, was insufficient to establish an abandonment (see *Gerbig v Zumpano,* 7 NY2d 327, *supra*). If the county now chooses to abandon this easement, it will be easy enough to accomplish by formal act of the appropriate authority. Accordingly, the county remains obligated to maintain the access road and it should be held liable in damages for its breach until such time as it unequivocally abandons the easement. The matter should be remitted for trial on the issue of damages only. All concur, except Callahan, J., who dissents in part, in the following memorandum.

Callahan, J. (dissenting in part). I must dissent in part. I agree that the trial court's finding of abandonment is not supported in the record. Plaintiffs, Hamilton Armstrong, Jr., and Bonnie B. Armstrong, acquired certain property in 1958 from Hamilton Armstrong, Sr., and Alice Darling Armstrong which was part of an ancestoral tract dating back to a Revolutionary War grant. Plaintiffs' great aunt, Elizabeth Armstrong, had owned approximately 300 acres situate in the Town of Manlius, Onondaga County, portions of which were previously conveyed to two nephews, Collin Armstrong and Hamilton Armstrong, Sr. Both brothers' properties had frontage on Route 290 (Green Lake Road) and a private road which intersected Route 290 was used by the Armstrongs as the sole means of ingress and egress from their dwellings to the highway. In 1964, plaintiffs were deeded additional acreage in this tract, a portion of which ran to the center of the private road as did the plot conveyed to them in 1958. None of the plaintiffs' property fronted Route 290. In May, 1964, Collin Armstrong conveyed another parcel in the tract to the County of

Onondaga (County), acting on behalf of the Onondaga County Water District. Since this parcel lacked frontage on Route 290, the deed to the County granted "[a] permanent right-of-way and easement" over the private road and further provided that the County would maintain the private road "after the date of this conveyance". In November, 1964, Collin Armstrong conveyed the remainder of his land to the Sisters of St. Francis, Minor Conventual (the Sisters). By subsequent agreement, the Sisters granted the County "a permanent right of way and easement over the existing private road to be used in common with others * * * which private road * * * shall be restored in good state of repair and maintained by the COUNTY". Previously, plaintiffs commenced an action against the County and the Sisters alleging that they wrongfully enlarged the use of the easement over the private road. Plaintiffs discontinued against the County. A summary judgment granted against the Sisters was reversed by this court. (*Armstrong v County of Onondaga,* 31 AD2d 735). Thereafter a settlement between plaintiffs and the County was embodied in an indenture dated November 11, 1971 wherein plaintiffs quitclaimed to the County all land southerly of the northerly boundary of the property the County received from Collin Armstrong and granted the County a permanent right of way and easement over the private road. The County agreed therein to maintain the private road "pursuant to and in accordance with the obligation so to do imposed upon and accepted by [the County] in the aforementioned deed from Collin Armstrong and dated May 29, 1964". It further provided that "the character, integrity and present location and dimensions of the said private right-of-way shall not be modified, altered, or violated in any manner, except upon the written consent of both parties" and that of the County. In this action, plaintiffs sought to have the County specifically perform its maintenance obligations, or, alternatively, damages for the County's breach of its prior agreements to maintain the private road. Plaintiffs claim to be beneficiaries of the two agreements: the 1964 deed from Collin to the County, wherein the County originally covenanted to maintain the road, and the 1965 agreement between the County and the Sisters wherein the County again agreed to maintain "the existing private road to be used in common with others". The County's answer admitted refusal to maintain the private road; however, it alleged as an affirmative defense that it "at no time entered any contract or assumed any obligation, intending to benefit plaintiffs as third party beneficiaries". Plaintiffs' amended bill of particulars asserted that they were both direct and third-party beneficiaries of the 1964 and 1965 agreements and that the 1971 agreement created a direct obligation on the part of the County. After a nonjury trial, the court dismissed plaintiffs' complaint on the grounds that the County abandoned its use of the easement, and because, in its view, the burden of maintenance should not be allowed to unfairly outlive the benefit of the use. In my view, plaintiffs have sustained the burden of demonstrating that they are third-party beneficiaries with enforceable rights (*Airco Alloys Div. v Niagara Mohawk Power Corp.,* 76 AD2d 68). The evidence clearly establishes that plaintiffs owned property to the center line of the private road and, as adjoining landowners, shared responsibility for maintaining the road with other family members. On acquisition of the property in 1964, an examination of title by the County would have disclosed that plaintiffs' property was contiguous to the private road. Also there is evidence that the County had obtained actual knowledge of its use by plaintiffs and others. This proof establishes plaintiffs as both creditor and donee beneficiaries under the 1964 deed and 1965 agreement. The County's performance of its promise to maintain the private road satisfied Collin's duty to plaintiffs to maintain the road, which arose out of the existing implied reciprocal easements (see *Matter*

*of Schenectady Ry. Co. v Greene,* 227 App Div 11, affd 257 NY 610). Inasmuch as the County agreed in the 1964 deed to maintain the existing private road .without excepting those portions owned by plaintiffs from its promise, it necessarily conferred a benefit upon plaintiffs which they can enforce (cf. Restatement, Contracts 2d, § 302, comment *d,* illustration 10). Initial acts of reliance and continued reliance serve to make the promise to maintain nonrevocable. The County may not vary the duty owed plaintiffs without their consent. Furthermore, the County agreed to maintain the private road directly with the plaintiffs in the indenture dated November 11, 1971. In so doing, the County both reaffirmed its earlier duty to maintain and undertook a separate although duplicate obligation. The board of supervisors had authorized the original acquisition of the property by the County. Approval by the board of the 1971 indenture was not mandated by section 2102 of the Onondaga County Charter. Even though plaintiffs purported to quitclaim certain property, they were merely effectuating provisions of earlier corrective deeds. The majority do not recognize the burden imposed by the third-party beneficiary relationship; nor do they give any weight to the 1965 agreement between the county and the Sisters which was specifically designed "to eliminate the rights of the parties to terminate use of the existing * * * road." What cannot be overlooked, however, is the 1971 agreement between these parties which, for valuable consideration, required performance by the County which could not be "violated in any manner, except upon the written consent of both parties." The majority have interjected an issue not raised, briefed or argued, i.e., a "covenant running with the land, with no temporal limitation upon its duration." This public policy consideration is not involved in this lawsuit and has no relevancy as between the contractual rights of these parties. Therefore, I agree the judgment of the trial court should be reversed. However, in my view, the County may not defeat plaintiffs' contractual rights or limit its damages by abandonment as is suggested by the majority. (Appeal from judgment of Onondaga Supreme Court, Miller, J. — easement.) Present — Dillon, P. J., Callahan, Doerr, Denman and Schnepp, JJ.